171 F.3d 1117
 Steven HOUSEMAN, Mary C. Houseman and Steven Houseman Jr.,
Plaintiffs-Appellants,
v.
UNITED STATES AVIATION UNDERWRITERS, Robert Timm, Brackett
Aircraft Co., Associated Aviation Underwriters,
Inc., and Spirit of St. Louis, Inc.,
Defendants-Appellees.
 No. 98-1637.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 5, 1998.
Decided March 29, 1999.
Rehearing and Suggestion for Rehearing En Banc Denied April
26, 1999.
 
 Michael S. Rosofsky (argued), Durkee & Rosofsky, Reistertown, MD, for Steven Houseman, Mary C. Houseman and Steven Houseman, Jr.
 William J. Kant (argued), Leib & Katt, Milwaukee, WI, for U.S. Aviation Underwriters, Robert Timm and Spirit of St. Louis, Inc.
 Lori L. Kaczynski (argued), Eric J. Van Vugt, Quarles & Brady, Milwaukee, WI, for Bracket Aircraft Co., Inc. and Association Aviation Underwriters, Inc.
 Before POSNER, Chief Judge, and FLAUM, and MANION, Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 Following the crash of a small airplane in 1995, a passenger sued the pilot for negligence. During discovery, the passenger attempted to add as a defendant the manufacturer of an air filter used in the airplane based on theories of negligence and products liability. Instead of staying the entire case so the manufacturer could prepare, the court ordered separate trials, first of the passenger's claim against the pilot followed by his claims against the manufacturer. Arguing that this bifurcation order severely prejudiced his suit and violated the Seventh Amendment, the passenger challenges the propriety of the district court's decision. Because the district court did not clearly abuse its discretion in ordering separate trials, we now affirm its decision.
 
 Background
 
 2
 On the night of December 11, 1995, a six seat Piper Aztec E airplane (the "Aztec" or the "airplane") piloted by Robert Timm took off from Wausau, Wisconsin bound for Tulsa, Oklahoma. About thirty minutes into the flight, Timm noticed that the plane's left engine was losing power. Despite the pilot's efforts to restore power, it eventually quit. Soon the right engine quit as well, and the pilot tried to glide the airplane to the nearest airport in Boscobel, Wisconsin. This attempt, however, was unsuccessful and the plane crashed into the woods well short of the runway.
 
 
 3
 Investigations following the crash determined that both engines failed because ice built up inside the air induction system blocking the flow of air into the engines. Normally, air flows to each of the Aztec's engines from holes behind the propellers. Before reaching the engines, the air passes through an air filter. If this air induction system is blocked by ice build up, and air pressure around the engines drops, an automatic spring door is designed to open creating an alternate air flow channel. This alternate air system provides hot, unfiltered air from inside the airplane which should melt any ice that forms inside the primary air induction system. The alternate channel can also be manually triggered by the pilot before or during the flight by flipping a switch in the cockpit. Timm apparently never employed the alternate channel in his attempt to restart the engine.
 
 
 4
 On February 18, 1997, Steven Houseman, a passenger who suffered serious and permanent injuries in the accident filed suit against the pilot, Robert Timm, in the U.S. District Court for the Western District of Wisconsin.[1] The complaint alleged that Timm had negligently failed to recognize the icing conditions soon enough and had failed to place the manual alternate air controls in the full "ON" position either before or after the ice formed in the primary air induction system. This carelessness, claimed Houseman, directly caused the accident.[2]
 
 
 5
 At an initial conference, Judge Shabaz scheduled trial for November 12, 1997. During discovery, the plaintiff learned that Timm's expert witness, Douglas Stimpson, was prepared to testify that the Aztec's air filter, manufactured by Brackett Aircraft Company ("Brackett"), was defective because it allowed excess moisture to pass into the air induction system and turn to ice.[3] Based on this information, Houseman sought leave to amend his complaint by adding Brackett as a defendant, claiming manufacturer negligence in the design and testing of the filter. Over the objections of Timm, the court granted Houseman's motion to amend on August 29, 1997. Brackett then moved for a continuance or a separate trial. On October 2, 1997, the court denied a separate trial but pushed back the trial date from November 11 to December 1, 1997.
 
 
 6
 On October 15, 1997, Houseman again sought leave to amend his complaint, this time adding a products liability claim against Brackett based on its air filters. Brackett argued that this claim should have been raised when Houseman's complaint was first amended and explained that it would be prejudiced by having to counter the strict liability theory on such short notice. Despite these objections, and the court's own concern that the plaintiff had been dilatory in advancing this theory, the court granted Houseman's motion on October 29, 1997. However, because it concluded that Brackett would have been unable to fully prepare for the new claim in the time remaining before trial, and that Timm should not have to wait until Brackett was prepared, the court bifurcated the claims against each defendant pursuant to Rule 42(b) of the Federal Rules of Civil Procedure.[4] Timm's trial remained set for December 1, 1997, followed by Brackett's in mid-February, 1998. In the final pre-trial conference, Judge Shabaz explained that the first jury would be asked to deliver a special verdict on whether Timm had been negligent and a cause of the accident. The second jury would then determine whether the filter was defective and, if so, whether it played any causal role.
 
 
 7
 The trial against Timm began on December 1, 1997 and ended the next day. The plaintiff argued that the accident was a result of pilot error and not the filter. Timm called expert Douglas Stimpson who testified that the accident was caused by the filter, and that Timm had not acted negligently. The plaintiffs offered no rebuttal testimony. Although the jury found that Timm had been negligent with respect to the operation of the airplane, it determined that his negligence was not a cause of the crash.
 
 
 8
 Before the second trial started, the plaintiff moved for judgment as a matter of law against Timm or, in the alternative, a new trial and to vacate the bifurcation order. Houseman argued that separating the question of causation between the two proceedings violated the Seventh Amendment because it allowed two juries to try the same issue. Also, by splitting the defendants, bifurcation denied Houseman the chance to take advantage of an "alternative liability" theory which, under certain circumstances, shifts the burden of proof on causation to the defendants. The court rejected the motion, finding ample support for the jury's special verdict, and concluded that the plaintiff had, to that point, been given a fair trial. As to Houseman's claim that he was unfairly prejudiced, the court stated that the argument was premature because the issues relating to Brackett had not yet been tried.
 
 
 9
 In order to pursue this appeal, Houseman agreed to judgment in favor of Timm, and to dismiss with prejudice his claims against Brackett.
 
 Discussion
 
 10
 The sole issue on appeal is whether the district court's decision to bifurcate the liability claims was an appropriate use of Rule 42(b). This rule permits the separation of claims or issues for trial if certain conditions are met. First, the trial judge must determine whether separate trials would avoid prejudice to a party or promote judicial economy. DeWitt, Porter, Huggett, Schumacher & Morgan v. Kovalic, 991 F.2d 1243, 1245 (7th Cir.1993). Only one of these criteria--avoidance of prejudice or judicial economy--need be met before a court can order separation. MCI Communications v. American Tel. & Tel. Co., 708 F.2d 1081, 1166 (7th Cir.1983). Next, the court must be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party. See Angelo v. Armstrong World Industries, 11 F.3d 957, 964 (10th Cir.1993). Finally, separate trials must not be granted if doing so would violate the Seventh Amendment. See Hydrite Chemical Company v. Calumet Lubricants Co., 47 F.3d 887, 890 (7th Cir.1995). The ultimate decision to bifurcate under Rule 42(b) is at the court's discretion and will be overturned only upon a clear showing of abuse. McLaughlin v. State Farm, 30 F.3d 861, 870 (7th Cir.1994). Applying this deferential standard, we must determine whether there was a sufficient basis for the court's decision and, if so, whether the decision unfairly prejudiced Houseman or violated the Seventh Amendment.
 
 Basis for Bifurcation
 
 11
 When Houseman moved to amend his complaint for a second time just prior to trial, the judge was faced with having to balance the interests of the three parties involved. As the court explained:
 
 
 12
 [I]t would be unduly prejudicial to require defendant Brackett to adhere to the amended trial schedule previously announced. The additional claims for strict liability would have severely prejudiced Brackett requiring a prolonged trial without sufficient preparation. Instead of denying the motion to amend, which based on plaintiffs' dilatory tactics would also have been an appropriate exercise of authority, the Court preserved for the plaintiff the opportunity to proceed against Brackett on negligence and strict liability at a later date. Defendant Timm was prepared to proceed on December 1, 1997 and should not have been prejudiced by plaintiff's further delay. Accordingly, it would have been a violation of the spirit of Rule 1 to adjourn the entire trial.
 
 
 13
 * * * * * *
 
 
 14
 Based on the plaintiff's delay in readying the matter for trial and the late filed motion to amend their complaint for the second time, the Court had no other choice then to sever the claim for trial or deny the plaintiff's belated motion.[5]
 
 
 15
 Once the court decided to allow Houseman's belated amendment, keeping the claims together would either require Timm to delay trial for over two months or force Brackett to defend a complex claim on short notice. The inconvenience to the first and the potential prejudice to the second was aggravated by the court's concern that Houseman had engaged in dilatory tactics. This was a sufficient basis for the court's decision. See MCI Communications, 708 F.2d at 1166. Other courts have concluded that these circumstances justify bifurcation. See Katsaros v. Cody, 744 F.2d 270, 278 (2nd Cir.1984) ("In the present case the claims against the trustee were ready for trial whereas the third party claims were still early in discovery .... Thus, it was not an abuse of discretion for the court to sever those claims from the instant case."); Randolph v. Laeisz, 896 F.2d 964, 969 (5th Cir.1990) (court did not abuse its discretion in separating claims against third-party defendant where it would have been unable to complete discovery in the few weeks remaining before trial); United States v. 1,071.08 Acres of Land, Yuma and Mohave Counties, Arizona, 564 F.2d 1350, 1352 (9th Cir.1977) (in condemnation proceeding, government's delay in providing discovery material to a defendant in part justified court's decision to bifurcate claim against that defendant).
 
 Prejudice to Houseman
 
 16
 Houseman argues that even if the decision had an adequate basis, the court abused its discretion because bifurcation unfairly prejudiced the plaintiff's case. See Angelo v. Armstrong World Industries, 11 F.3d 957, 964 (10th Cir.1993) ("[B]ifurcation is an abuse of discretion if it is unfair or prejudicial to a party"). He asserts that anytime a court's decision to separate claims against different defendants allows each to blame the other (absent) defendant, the court abuses its discretion. See Sunbelt Corporation v. Noble Denton & Associates, 5 F.3d 28, 34 (3rd Cir.1993) (court should not allow severance where it would "place each defendant in the position of being able to defend by asserting the absent party's negligence."); This "empty chair" situation, claims Houseman, created serious prejudice in two ways: it denied the plaintiff the chance to shift the burden of proof to the defendants and it forced Houseman to destroy his own case against Brackett. We examine these claims in turn.
 
 Burden Shifting
 
 17
 Houseman first argues that by separating the claims against Brackett from those against Timm, the plaintiff was denied the chance to shift the burden of proof on causation to the defendants under an alternative liability theory. See Summers v. Tice, 33 Cal.2d 80, 199 P.2d 1 (1948). This theory holds that:
 
 
 18
 When the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one of them has caused it, the burden is upon each such actor to prove that he has not caused the harm.
 
 
 19
 RESTATEMENT (SECOND) OF TORTS, § 433B(3) (1965). The Restatement rule is an outgrowth of Summers. 199 P.2d at 5. In that famous case, two hunters negligently fired their guns in the direction of the plaintiff who was hit by a single bullet. Because it could not be determined which hunter actually hit the plaintiff, the court placed the burden of disproving responsibility on each hunter. Id. This burden-shifting scheme was a policy response to "the injustice of permitting proved wrongdoers, who among them have inflicted an injury upon the entirely innocent plaintiff, to escape liability merely because the nature of their conduct and the resulting harm has made it difficult or impossible to prove which of them has caused the harm." RESTATEMENT (SECOND) OF TORTS, § 433B(3), comment f.
 
 
 20
 Wisconsin courts have adopted the scheme, and identified its triggering prerequisites.[6] Collins v. Eli Lilly Co., 116 Wis.2d 166, 342 N.W.2d 37 (1984); Fiumefreddo v. McLean, 174 Wis.2d 10, 496 N.W.2d 226 (1993). Before the burden of proof shifts to the defendants, the plaintiff must show that: (1) the conduct of two or more defendants was tortious; (2) harm has been inflicted by only one of the defendants; and (3) uncertainty exists as to which defendant actually caused the harm. Collins, 342 N.W.2d at 45. In addition, the Wisconsin Supreme Court has strongly implied the existence of a fourth requirement, that defendants be "in a far better position [than the plaintiff] to offer evidence to determine which one caused the injury." Id. at 46 (quoting Summers, 199 P.2d at 4).[7]
 
 
 21
 While we agree that incorrectly denying a plaintiff the opportunity to shift the burden of proof would certainly be prejudicial and would justify overturning the district court's decision, we do not believe the alternative liability theory applies to Houseman's claims. Although Houseman could potentially have satisfied the first and third requirements--that both Timm and Brackett's conduct was tortious, and that uncertainty existed as to which (if either) caused the accident--the plaintiff cannot satisfy the second requirement--that only one of the defendants was responsible.
 
 
 22
 First, this was not a case where only one of the two defendants necessarily caused the crash. When the suit was initiated, it was entirely possible that the jury could have found that Timm's and Brackett's conduct jointly resulted in Houseman's injuries. See Johnson v. Heintz, 73 Wis.2d 286, 302, 243 N.W.2d 815, 826 (1976) (multiple defendants liable where each was a substantial factor in causing harm). This alone appears to preclude burden shifting under Wisconsin law. See Fiumefreddo, 496 N.W.2d at 230. Houseman, however, argues that alternative liability (as opposed to joint liability) is not actually a requirement of the alternative liability theory. Relying on Anderson v. Somberg, 67 N.J. 291, 338 A.2d 1 (1975), Houseman points out that at least one court has shifted the burden of proof to multiple defendants who were alleged to have jointly caused the plaintiff's injuries. In Anderson, a patient was injured during the course of his surgery by a defective medical instrument but was unable to establish between or among the hospital, the doctor, and the instrument's manufacturer, exactly where culpability should lie. Id. at 301, 338 A.2d 1. The New Jersey Supreme Court devised a limited exception to the traditional rule that plaintiffs must carry the entire burden of proof in establishing liability where the defendants owe a "special responsibility" to the plaintiff. That court's decision was based primarily on the plaintiff's helplessness during surgery. Id. Houseman argues that as a passenger in the Aztec, he was in the same position as the unconscious patient in Anderson, and that Timm and Brackett therefore owed him a responsibility special enough to shift the burden of proof on causation.
 
 
 23
 We are not persuaded by this analogy. For one thing, Houseman can point to no authority even suggesting that Wisconsin courts recognize this "special responsibility" theory. Moreover, even New Jersey courts have emphasized that this theory is limited to the particular facts of Anderson. See Blitz v. Hutchinson, 252 N.J.Super. 580, 600 A.2d 485, 486 (1991). This limitation--even if the "special responsibility" theory were accepted by Wisconsin courts--precludes Houseman's argument.
 
 
 24
 The second reason the alternative liability theory would not apply to Houseman is that implied in the requirement that only one defendant be responsible is the assumption that all of the potentially liable defendants have been joined in the lawsuit. Collins v. Eli Lilly Co., 116 Wis.2d 166, 342 N.W.2d 37 (1984). Only then can the court "be sure that at least one of the defendants was directly responsible for the plaintiff's harm." Id. In Collins, the plaintiff attempted to use the alternative liability theory in a suit by a class of women against certain drug manufacturers alleging injuries stemming from ingestion of diethylstilbestrol ("DES"). The Wisconsin Supreme Court refused to apply the burden-shifting theory in part because not all of the potentially responsible defendants had been joined. Id. ("[I]t may be impossible to identify all DES producers or marketers because of the fluid nature of the market over the years DES was produced and marketed."); Cf. Fiumefreddo, 496 N.W.2d at 231 (theory applied in case involving alleged medical malpractice where "all persons who possibly could have been causally negligent in this case are defendants."). Here, Timm and Brackett were not the only potentially responsible parties. The report of Timm's expert witness identified at least two others who could have caused the crash: Piper Aircraft, the manufacturer of the Aztec, and AC Spark Plug, which designed and tested the filter at issue. Neither of these parties was ever joined in the case, and it is certainly possible that either one of them, rather than Timm or Brackett, was causally responsible for the crash. Thus burden shifting would not have been appropriate. Id.
 
 
 25
 Finally, the plaintiff was not in a position of being unable to prove causation. Houseman, through discovery, had access to the same information as the defendants, and had expert witnesses prepared to testify as to causation. This was not a situation, like that faced by the victim in Tice, where the injured party had no basis for determining and establishing which of the two defendants caused the accident. Collins, 342 N.W.2d at 46 (noting that because both parties had problems with access to information about DES production and marketing, the defendants were not "in a far better position to offer evidence to determine which one caused the injury.").
 
 
 26
 Houseman Forced to Destroy Case Against Brackett
 
 
 27
 The second prong of Houseman's prejudice argument is that by separating the defendants, the court forced the plaintiff to destroy in the first trial his case against Brackett in the second. Without Brackett there to defend itself, Houseman asserts, Timm was free to argue that the filter was the sole cause of the accident, requiring Houseman to defend the integrity of Brackett's product. Indeed this is what occurred during the first trial. One of Timm's anticipated defenses was that the filter was the sole cause of the accident and he presented expert testimony to that effect. Houseman called experts Arthur B. Childers and Charles J. Wray who had filed affidavits stating that there was nothing wrong with Brackett's filters and that they were in no way the cause of the crash. Had the parties proceeded to the second trial, maintains Houseman, Brackett would have called Childers and Way in its own defense. This, according to Houseman, is sufficiently prejudicial to warrant reversal. See Angelo v. Armstrong World Industries, 11 F.3d 957, 964 (10th Cir.1993).
 
 
 28
 However, we are unable to see how this prejudice is anything but self-imposed. At trial, Houseman chose to refute Timm's anticipated defense in part by claiming that the filters were not defective and played no part in the accident. We find nothing in the record suggesting that this was the only, or even the best, argument he could have made. If it were, Houseman had no business joining Brackett in the first place.[8] On our reading of the reports Houseman's experts filed prior to trial, there was nothing keeping the plaintiff from arguing that both the filter and the pilot combined to cause the crash. Indeed, none of the plaintiff's theories of how Timm caused the crash depended on a properly functioning filter. Houseman's opening statement outlined four ways in which Timm's alleged negligence could have caused the crash. First, had the pilot correctly assessed the icy conditions before taking off from Wausau he would have switched to the alternate air induction channel to override the automatic system (the system involving the Brackett filter) and the engines never would have quit. Second, once in flight, had the pilot properly monitored the air pressure gauge to recognize that the automatic system was not working, he should have pulled the knob activating the alternate system and re-starting the engine.[9] Next, had Timm immediately contacted the nearest air traffic control instead of waiting until both engines quit, he could have been guided through emergency procedures and brought the plane down safely. Finally, after the engines quit, had Timm properly feathered the plane's propellers, "he would have been able to glide the [the plane] to the airport" instead of crashing into the woods. Three of these theories focus on Timm's causal conduct after the filter had allegedly caused the dangerous situation. One theory--failure to override the automatic induction system prior to take-off--renders the filter issue irrelevant. None depended on the Brackett filter being in good working order. Given this, we see no reason why the court's bifurcation decision "forced" Houseman to argue that there was nothing wrong with it.[10] Houseman did not have to disprove that the filter played any role in the accident. As the court emphasized, the question before the jury was not whether the defendant was the sole cause of the accident but whether he was "a cause."[11] Instead, Houseman chose a trial tactic which left him in the entirely foreseeable position of having placed expert testimony on the record exonerating Brackett.[12] Appellate review of Rule 42(b) decisions is not meant to insulate parties from their own trial strategies and, without more, we will not overturn the district court's decision on that basis.[13]
 
 Seventh Amendment
 
 29
 Houseman's final argument is that bifurcation violated the Seventh Amendment because it would have required different juries to pass on the same essential question. The Seventh Amendment provides that: "In suits at common law ... the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise reexamined." U.S. CONST. AMEND. VII. Houseman's challenge is based on the second clause. To avoid conflict with this constitutional provision, questions in a single suit can only be tried by different juries if they are "so distinct and separable from the others that a trial of [them] alone may be had without injustice." Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494, 500, 51 S.Ct. 513, 75 L.Ed. 1188 (1931). In other words, the district court "must not divide issues between separate trials in such a way that the same issue is reexamined by different juries." Matter of Rhone-Poulenc Rorer Inc., 51 F.3d 1293, 1303 (7th Cir.1995). While both juries can examine overlapping evidence, they may not decide factual issues that are common to both trials and essential to the outcome. PaineWebber, Jackson & Curtis v. Merrill Lynch, Pierce, Fenner & Smith, 587 F.Supp. 1112, 1117 (D.Del.1984).
 
 
 30
 Houseman argues that because Timm asserted in the first case that Brackett's filter was the sole cause of the accident, causation was a single issue, or at least two issues which were substantially intertwined. Either way, claims Houseman, the jury could not have decided Timm's liability without determining Brackett's. The bifurcation order thus set up a situation where two juries would decide the same issue: the cause of the crash. Specifically, the jury found that even though Timm had negligently piloted the airplane, he had not caused the crash. According to Houseman, the only way Timm's negligence could not have been a cause is if the airplane would have crashed in any event because of Brackett's defective filter. This, asserts Houseman, necessarily implies that the first jury decided that Brackett's filter was the cause of the crash. Thus if the second jury were to examine causation as it related to Brackett, it would be doing so in violation of the Seventh Amendment. Rhone-Poulenc, 51 F.3d at 1303.
 
 
 31
 Houseman asserts that this case is analogous to and controlled by our decision in Rhone-Poulenc, 51 F.3d at 1293. In that case, the district court had certified a class of hemophiliacs attempting to sue manufacturers of antihemophiliac factor concentrate (AHF) claiming that as a result of using that product they had become infected with the Human Immunodeficiency Virus (HIV). However, the class was only certified for a determination of whether, based on two distinct theories, any of the defendants had been negligent. Once that determination was made by a single jury, follow-up suits by the individual class members would occur around the country to decide proximate causation and comparative negligence issues, giving collateral estoppel effect to the initial negligence finding. Id. at 1302-03. This court granted the manufacturers' writ of mandamus and decertified the class based in part on Seventh Amendment concerns. Because the issues of comparative negligence and proximate causation could not be determined without re-examining, and in some cases effectively re-deciding, the underlying negligence decision, multiple juries would have been deciding the same issue with regard to the same manufacturers. Id. at 1303. This posed a serious risk of inconsistent verdicts among the different juries and therefore ran afoul of the Seventh Amendment. Id.
 
 
 32
 That risk, however, is not present here. The claims against each defendant are based on different legal theories and involve distinct inquiries. The first jury could decide that Timm was not a cause of the crash without deciding anything about Brackett. As discussed above, this is not a case of alternative liability where one of two or more defendants necessarily caused the harm and each defendant's causal negligence is mutually exclusive of the other's. Summers v. Tice, 33 Cal.2d 80, 199 P.2d 1, 5 (1948). The accident could have been caused by Timm or Brackett, by both or by neither. The court's instructions emphasized that the jury was only asked to determine whether Timm's conduct was a substantial factor in the crash, but that it need not be the only factor. Houseman has pointed to nothing suggesting that the jury's finding that Timm's negligence played no part in the accident was premised on a finding that Brackett's design did or did not cause the crash. We read nothing in the record which compels that inference.[14]
 
 
 33
 Had Houseman proceeded to the second trial against Brackett, the jury would have been asked to decide only whether Brackett's filter, if defective, was a cause of the accident. The jury would need to determine whether the filter functioned in a way that prevented air from getting to the engine, creating the likelihood of engine failure. This question is antecedent to and independent of anything the pilot may have done once the airplane was in trouble. At trial, Brackett would have been limited to arguing that its filter was not defective, or that something other than Timm's negligence caused the crash. In its answer to Houseman's amended complaint, Brackett did allege as an affirmative defense that "any injuries or damages sustained by plaintiffs were caused by third parties for whom these defendants have no responsibility." Assuming this means Brackett meant to argue at trial that Timm's negligence was a superseding cause of the accident, that argument would have been preempted by the special jury verdict in favor of Timm in the first trial. That Timm was not a cause of the accident would have already been decided and Brackett could not have reargued that question. See In re Innotron Diagnostics, 800 F.2d 1077, 1085 (Fed.Cir.1986) (issues decided in first half of bifurcated trial become law of the case and were thus removed from consideration by the second jury); see also Rhone-Poulenc, 51 F.3d at 1303 (suggesting decision by first jury in bifurcated proceeding would bind subsequent juries: "In this limited sense, a jury verdict can have collateral estoppel effect.").[15] This case is thus distinguishable from Rhone-Poulenc in that here each jury will separately assess the causal link (if any) between only one defendant's conduct and the crash. Because both, neither or either defendant could have been causally responsible, and Timm's causation could not have been revisited, there was no risk of inconsistent jury decisions.[16] See Rhone-Poulenc, 51 F.3d at 1303; see also Castano v. American Tobacco Company, 84 F.3d 734, 750-51 (5th Cir.1996) (Seventh Amendment requirement that issues be distinct before they can be separated is based on avoiding inconsistent jury verdicts) (citing Gasoline Products v. Champlin Refining, 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931)).
 
 
 34
 In the end, Houseman's Seventh Amendment argument boils down to an assertion that much of the evidence presented in the first trial would have been re-examined in the second. Yet, this alone does not raise constitutional concerns. See Innotron Diagnostics, 800 F.2d at 1086 (bifurcation of anti-trust and patent claims upheld despite likelihood that "most of the facts and issues in the patent trial [were] overwhelmingly intertwined and overlapping with those [in the anti-trust case].") The Seventh Amendment is concerned about factual conclusions, not evidence: "The prohibition is not against having two juries review the same evidence, but rather against having two juries decide the same essential issues." PaineWebber, 587 F.Supp. at 1117. Because the two juries were asked to decide distinct questions, and because the second jury could not have re-examined the conclusions of the first, the Seventh Amendment was not offended by the bifurcation order.
 
 Conclusion
 
 35
 The deferential standard by which we review challenges to bifurcation is based on the notion that the district court is in a far better position to assess and attempt to reconcile the competing interests of each party, judicial economy and unfair prejudice. McLaughlin, 30 F.3d at 870. In hindsight, had the court either denied Houseman's motion to amend or granted it and continued all claims until Brackett was prepared, the disposition of this case might have been much simpler. Yet, as another court has recently explained in analyzing a decision to separate issues under Rule 42(b): "We need not decide whether this was the best or even the only good method of trying this case. We need only determine whether, under all of the circumstances before him, the trial judge's decision to [bifurcate] was an abuse of discretion." In re Bendectin Litigation, 857 F.2d 290, 320 (6th Cir.1988). Because we cannot say that the court abused its discretion in ordering separate trials here, we will not second guess its decision. For these reasons the district court's judgment is A FFIRMED.
 
 
 
 [1]
 Federal jurisdiction was based on diversity. 28 U.S.C. § 1332 (1996)
 
 
 [2]
 Steven Houseman's wife Mary C. Houseman and his son Steven Houseman Jr. are also plaintiffs claiming loss of companionship. Neither were passengers in the airplane, however, and for convenience, we refer to the plaintiff in the singular, or as "Houseman."
 
 
 [3]
 The Brackett air filter was not the Aztec's original filter. It was a replacement installed sometime after the airplane was built. The filter was actually designed by AC Spark Plug Co., but the design was acquired and marketed by Brackett. In addition to Brackett, Stimpson's report identified the Federal Aviation Administration, AC Spark Plug and the Aztec's manufacturer, Piper Aircraft Co., as having some potential responsibility for what Stimpson saw as defects in the way air was delivered to the plane's engine
 
 
 [4]
 Rule 42(b) provides:
 (b) SEPARATE TRIALS. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counter-claim, or third-party claim, or of any separate issue ... always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.
 FED.R.CIV.P. 42(b).
 
 
 [5]
 Although courts generally use the terms sever and separate interchangeably, they are analytically distinct: "The procedure authorized by Rule 42(b) should be distinguished from severance under Rule 21. Separate trials will usually result in one judgment, but severed claims become entirely independent actions to be tried, and judgment entered thereon, independently." McDaniel v. Anheuser-Busch, 987 F.2d 298, 304 n. 19 (5th Cir.1993) (citing 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 2387, at 470 (1971)). Only separation under Rule 42(b) is at issue in this case
 
 
 [6]
 The parties do not dispute that the burden of proof in this diversity action is determined by Wisconsin law. See Roberts & Schaefer v. Merit Contracting, 99 F.3d 248, 253 n. 2 (7th Cir.1996) (in diversity action, "state law governs questions regarding which party bears the burden of proof on a particular issue.")
 
 
 [7]
 Brackett argues that concerted action by the defendants is an additional requirement for application of the theory. See Fiumefreddo, 496 N.W.2d at 231. While this was a factor that court discussed in assessing the defendants' liability, and the typical alternative liability case will involve defendants acting together, we are not convinced such action is required under Wisconsin law. Id
 
 
 [8]
 It is important to note that Houseman is not claiming he was denied full discovery against both defendants. He was free to pursue evidence from either defendant, and claimed, in his brief opposing bifurcation, to be prepared to proceed against Brackett
 
 
 [9]
 The record reveals that the plaintiff had identified a potential expert, Mr. Huls, who was prepared to testify that even if ice formed within the induction system, the pilot should still have pulled the alternate induction switch, which would have melted the ice and (presumably) averted the accident. However, because the plaintiff was unable to secure his presence voluntarily, and failed to establish that he was not within the court's 100 mile subpoena power, Huls' testimony was not allowed. The plaintiffs do not challenge this
 
 
 [10]
 We recognize that it would have been to Houseman's advantage to have Brackett at the first trial to have another voice arguing that Timm had been negligent. But this loss of a trial advantage is not by itself sufficiently prejudicial to justify reversal. Balancing the loss of this advantage with the benefit of being allowed to amend the complaint a second time and with the hardship the joinder would cause the defendants is a calculation within the court's special competence. Because its decision did not prevent Houseman from fully pursuing his theories against the pilot, we do not believe the court abused its discretion
 
 
 [11]
 The jury instructions on causation stated:
 The cause questions ask whether there was a causal connection between the negligence of Robert Timm and the accident. The question does not ask about "the cause" but rather "a cause." The reason for this is that there may be more than one cause of an accident. The negligence of one person may cause an accident, or the combined negligence of two or more persons may cause it. Before you find that defendant Robert Timm's negligence was a cause of the accident, you must find that the negligence was a substantial factor in producing the accident.
 
 
 [12]
 To some extent, the prejudice Houseman claims is inherent in suits claiming that multiple defendants are liable for the same injury. Whether the claims were tried together or separately, because Houseman bore the burden of proof he would have needed to produce evidence against each defendants. The evidence he presented against either defendant could then have been used by the other
 
 
 [13]
 Based on Houseman's late attempt to join Brackett, the district court indicated that without bifurcation, it would likely deny the motion to amend entirely, leaving Houseman without a potentially fruitful strict liability theory. Although this question is not before us, we see nothing on the record suggesting that such a decision would have been an abuse of the court's discretion
 
 
 [14]
 Although Timm's expert witness testified in the first trial that it was the filter, not Timm's conduct which caused the crash, this does not mean that the jury decided this issue, let alone credited the evidence. As the district court noted in its denial of post trial motions, the same expert testified that Timm had not been negligent--a conclusion the jury clearly rejected
 
 
 [15]
 Any prejudice Brackett would have endured as a result of the loss of this defense was certainly within the risk the defendant assumed by requesting bifurcation in the first place. Cf. Cohen v. Bucci, 905 F.2d 1111, 1112 (7th Cir.1990) (debtor was precluded from disputing prior determination, even though debtor claimed lack of incentive to contest in earlier action, because he should have known consequences); see also R ESTATEMENT (S ECOND) OF J UDGMENTS § 62 (1982)
 
 
 [16]
 We note, however, that when the decision to bifurcate was made, it did create a risk of Seventh Amendment violation, and to that extent was erroneous. Had the first jury determined that Timm's conduct played a causal role in the accident and had a second jury decided that Brackett's filter was also a cause, Wisconsin law suggests that Brackett could have asked a second jury to address the issue of comparative negligence. See Howes v. Deere & Company, 71 Wis.2d 268, 238 N.W.2d 76, 80 (1976); Becker v. State Farm Mut. Ins. Co., 141 Wis.2d 804, 416 N.W.2d 906, 912 (Wis.App.1987). Because such an inquiry would entail a reexamination of Timm's conduct by a second jury, it would have run afoul of the Seventh Amendment. See Rhone-Poulenc, 51 F.3d at 1303. However, that was not the case here. Because the first jury found that Timm's conduct was not a cause of the accident, there would be no need for a second jury--if it had found Brackett's filter to be a cause--to make the comparative negligence inquiry. Indeed, as stated above, Brackett would have been prevented from insisting on it. (See footnote 15 and accompanying text.) Thus, although we cannot approve of the court's initial decision creating the risk of two juries deciding the same question, because that possibility was eliminated after the first verdict, the error was harmless. See King v. United Benefit Fire Insurance, 377 F.2d 728, 731-32 (10th Cir.1967) (determining that denial of jury trial did not violate Seventh Amendment based on developments at trial) (citing F ED.R.CIV.P. 61)