**Mary A. FREEMAN, Plaintiff–Appellant,**

**v.**

**CHICAGO PARK DISTRICT, Defendant–Appellee.**

No. 98–3460.

United States Court of Appeals, Seventh Circuit.

Argued May 13, 1999.

Decided Sept. 1, 1999.

Rehearing and Rehearing En Banc Denied Oct. 4, 1999.

Thomas D. Rosenwein (argued), Schaefer, Rosenwein & Fleming, Chicago, IL, for Plaintiff–Appellant.

Caroline E. Rdzanek (argued), Chicago Park District, Chicago, IL, for Defendant–Appellee.

Before BAUER, MANION, and KANNE, Circuit Judges.

MANION, Circuit Judge.

Mary Freeman worked in the personnel department of the Chicago Park District ("CPD") until she was laid off during a reduction in workforce program. Freeman claimed that the CPD harassed her and then ultimately discharged her on account of her race. She filed a complaint with the EEOC, and eventually sued in federal court. The case was tried to a jury which, according to Freeman, rendered an inconsistent verdict, necessitating a new trial. The district court found the verdicts to be inconsistent, and decided to strike the damage award, thereby removing the inconsistency. Freeman also appeals from the district court's dismissal of her § 1981 claim, and the denial of her post-trial motion to amend the pleadings. We affirm the district court's judgment, albeit on different grounds.

This appeal turns on how the special verdict forms used in this case are interpreted, and therefore, we begin with them. Freeman initially proposed a special verdict form which asked whether the plaintiff was harassed due to her race. The CPD objected, on the grounds that the question assumes that Freeman was in fact harassed. The district court sustained the objection, and modified the special verdict form to first ask if Freeman was harassed, and then, whether this harassment was due to race. The special verdict forms, and the jury's answers, are as follows:

QUESTION No. 1

Do you find from a preponderance of the evidence that the defendant CHICAGO PARK DISTRICT harassed plaintiff Mary Freeman while she was employed by defendant?

[The jury answered "yes."]

QUESTION No. 2

Do you find from a preponderance of the evidence that race was one of the reasons that the defendant CHICAGO PARK DISTRICT harassed plaintiff MARY FREEMAN while she was employed by defendant?

[The jury answered "no."]

QUESTION No. 3

Do you find from a preponderance of the evidence that race was one of the reasons that the defendant CHICAGO PARK DISTRICT discharged Plaintiff MARY FREEMAN from employment by defendant?

[The jury answered "no."]

QUESTION No. 4

Do you find from a preponderance of the evidence that the Defendant CHICAGO PARK DISTRICT retaliated against plaintiff MARY FREEMAN for her complaints of discrimination, including the filing of a Charge of Discrimination with the EEOC?

[The jury answered "no."]

QUESTION No. 5

If your answers to any of Questions 1, 2, 3, or 4 is yes, what amount of damages did plaintiff MARY FREEMAN suffer as a result of defendant CHICAGO PARK DISTRICT'S harassment, termination and/or retaliation?

[The jury answered "$45,000."]

QUESTION No. 6

Do you find from a preponderance of the evidence that MARY FREEMAN violated the Code of Conduct and Guidelines for Discipline by removing CHICAGO PARK DISTRICT property from its premises without authorization and that defendant CHICAGO PARK DIS-TRICT would have terminated her for doing so?

[The jury answered "yes."]

■ Freeman contends that the jury's finding of damages in the amount of $45,-000 is inconsistent with a finding of no racial motivation for the harassment. Therefore, she requests that the matter be remanded for a new trial. The CPD, on the other hand, argues that the jury verdict is consistent. It accepts the jury's conclusion that it harassed Freeman, and in so doing, caused $45,000 worth of damages, but because the harassment was not motivated by racial prejudice, CPD asserts the harassment is not actionable under Title VII. The district court found that "as a matter of law, it is inconsistent for the jurors to find that plaintiff was simply harassed and award damages." Memorandum Opinion and Order dated September 2, 1998, at 11. The district court decided to "salvage" the verdict by striking the damage award. *Id.*

■ There is no priority of one answer over another when the verdicts are inconsistent. *American Cas. Co. v. B. Cianciolo, Inc.*, 987 F.2d 1302, 1305 (7th Cir.1993). The proper remedy for inconsistent verdicts is a new trial. *Id.*; *Gallick v. Baltimore & Ohio R. Co.*, 372 U.S. 108, 119, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963). But it is equally established that jury verdicts must be interpreted so as to avoid inconsistency whenever possible: "Where there is a view of the case that makes the jury's answers to the special interrogatories consistent, they must be resolved that way." *Id.* As we noted in *American Casualty*, "we should do what we can to save the verdict against the spectre of inconsistency." 987 F.2d at 1306.

■ The district court and the parties agree that the verdict forms used in this case were special verdict forms submitted to the jury under Rule 49(a) of the Federal Rules of Civil Procedure. However, in concluding that the special verdict is inconsistent, Freeman and the district court

seem to view Question No. 5 as presenting a general verdict damage award. General verdicts necessarily encompass all of the essential elements of the claim. *Melendez v. Illinois Bell Tel. Co.*, 79 F.3d 661, 670 (7th Cir.1996). "A general verdict, without more, will of course give rise to the presumption that material fact issues have been resolved in favor of the prevailing party...." *Dual Mfg. & Eng'g, Inc. v. Burris Indus., Inc.*, 619 F.2d 660, 667 (7th Cir.1980) (en banc). A special verdict, however, fulfills a far more limited role. "Under Rule 49(a) [of the Federal Rules of Civil Procedure], governing procedure involving special interrogatories or special verdicts, the trial judge has the responsibility of applying appropriate legal principles to the facts found by the jury; it is for the court to decide upon the jury's answers, the jury's special verdicts, what the resulting legal obligation is." *Thedorf v. Lipsey*, 237 F.2d 190, 193 (7th Cir.1956); *see also United States v. Kim*, 111 F.3d 1351, 1362 (7th Cir.1997). Thus, the term "damages" in the context of a special verdict has more limited meaning than in a general verdict: It refers only to the loss suffered by the plaintiff, a question of fact.[1] The legal conclusion, that the defendant is liable for the amount of the loss, will depend on the judge's application of the law to the facts as they are found by the jury. *See generally* Wright & Miller, 9A *Federal Practice & Procedure* § 2510, n. 13 & text accompanying (1995 & Supp. 1999) (citing *Thedorf*, 237 F.2d 190).

With this distinction in mind, it seems evident that the jury's verdict is not inconsistent. The jury found that the plaintiff was harassed (apparently for reasons other than those protected by Title VII), and suffered damages, or a loss, in the amount of $45,000. However, the judge must en-

ter judgment for the defendant, because the jury found that the harassment was not motivated by racial prejudice, and therefore, the plaintiff did not establish a Title VII violation. As the award of damages in the context of a special verdict does not imply a finding of all the essential elements of the claim, the district court erred in concluding that the verdict was inconsistent, and in striking the jury's answer to Question No. 5. However, the special verdict does not entitle Freeman to a judgment because the harassment for which the jury awarded damages was not motivated by racial discrimination. Therefore we affirm the district court on this issue.

The district court relied on *American Casualty Co. v. B. Cianciolo, Inc.*, 987 F.2d at 1305, and appeared to follow that case in ruling to set aside part of the verdict to make it consistent. But the facts of that case were unusual, which explains why that decision was correct, but does not support the striking of the damage award in this case. In *American Casualty*, the jury found both fraud on the part on an insured, and bad faith on the part of the insurer. This court noted that a "judge may dissipate the inconsistency by setting aside one of the conflicting verdicts, *if that verdict was unsupported by the evidence.*" 987 F.2d at 1305 (emphasis added) (citation omitted). We found that the jury's verdict of bad faith on the part of the insurer was not supported by the evidence. *Id.* at 1305–07.[2] As the evidence presented at trial could not support one of the jury's findings, the judge could excise the unsupportable verdict, and allow the rest to stand. This has no application in this case, as clearly a reasonable jury could find that Freeman suffered a $45,000

---

1. For this reason, the court need not direct the clerk to prepare, sign and file judgment upon a jury's general verdict. *See* Fed. R.Civ.P. 58. However, where the jury returns a special verdict, or general verdict with answers to interrogatories, the court must approve the form of the verdict. *Id.*

2. As an alternative holding, we also noted that the findings of bad faith on the part of the insurer and fraud on the part of the insured were not necessarily inconsistent. *Id.* at 1305.

loss (though the loss is not compensable under Title VII).

Freeman's case, while not the norm, is not unique. In *Halprin v. Mora*, 231 F.2d 197, 200 (3d Cir.1956), involving a car accident, a jury found that the defendants had not been negligent, yet awarded $11,000 in damages. The Third Circuit reasoned that "[a]lthough questions three and four use the word 'award,' we think the court was only asking about the amount of loss and that the jury and all counsel so understood the questions." The Third Circuit also noted that if these were general verdict questions, the result would be the same, because the court may consider the special interrogatories controlling. *Id.* Also, in *Nimnicht v. Dick Evans, Inc.*, 477 F.2d 133, 135 (5th Cir.1973), involving an accident on a barge, the jury found that the vessel was seaworthy and that the employer had not been negligent. Despite these findings, the jury awarded $13,500 in damages. The Fifth Circuit affirmed the entry of judgment for the defendant, on the grounds that the special interrogatories negated the award of damages. As did the court in *Halprin*, we view the damage award as a measure of loss: the jury found that $45,000 would compensate Freeman for the harassment she suffered. However, the jury verdict also informs us that Freeman was not harassed on account of race. Therefore, Freeman is not entitled to judgment, and the district court was correct to enter judgment for the defendant.

The remaining issues require less discussion. After the jury had been discharged, Freeman filed a motion seeking to change her theory of the case. In this motion, she argued that an employee handbook created a contract between her and the CPD, and that her supervisor's harassment breached that contract. She sought leave to amend her pleadings to conform to the proof at trial. The district court denied this motion, finding that the employee handbook did not create a con-

tract, and that this theory of the case was not tried with CPD's consent.

We agree with the district court on both issues, and also raise a third problem with Freeman's argument. The employment book prohibits employees from engaging in harassing conduct, but it does not affirmatively promise that employees shall never be harassed. Rather, it states that if an employee harasses another employee, the harassing employee may be terminated. Therefore, if one employee harasses another employee, the harassing employee is breaching the contract with CPD. But as the contract does not guarantee that employees will not be harassed, CPD is not in breach of the contract. The only theory which permits Freeman to recover on this agreement would be if she could establish that she is the intended third-party beneficiary of this contract, so that if another employee harasses her, thereby breaching the contract, she would have standing to sue for the breach. However, the record is devoid of evidence that she is an intended third-party beneficiary.

Of course this discussion assumes that the employee handbook creates a contract; as the district court found, this assumption is incorrect. The employee handbook specifically disclaims that it is a contract, and the handbook itself is the best evidence of whether the parties intended to form a contract. We need nothing more to conclude that it is not a contract. Furthermore, Freeman has not presented any evidence that this contract disclaimer lacks consideration or is otherwise void. Thus, this case is distinguishable from *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314, 319 (Ill.1987) (employee handbook held to be contract in absence of disclaimer), and *Doyle v. Holy Cross Hosp.*, 186 Ill.2d 104, 237 Ill.Dec. 100, 708 N.E.2d 1140, 1145 (Ill.1999) (change in employee handbook by adding contract disclaimer not supported by consideration to existing employees; handbook held to be contract).

■ The district court was also correct in concluding that the amendment of the pleadings would be improper. Unless Fed.R.Civ.P. 15(b) is satisfied, "a plaintiff who fails at trial to prove an essential element of his case may not retry the case on a different theory." *Burdett v. Miller*, 957 F.2d 1375, 1380–81 (7th Cir.1992) (citations omitted). We have no doubt that the contract claim in this case is a *post hoc* attempt by the plaintiff to capitalize on the jury's verdict. The plaintiff did not mention this alleged contract claim at all during the trial, and in fact, the defendant, not the plaintiff, introduced the employee handbook into evidence.[3] To satisfy Rule 15(b) of the Federal Rules of Civil Procedure, an issue not raised in the pleadings must be "tried by express or implied consent of the parties. . . ." In this case, we doubt whether the issue was even tried, and certainly, the contract claim was not tried with the consent of the defendant. Therefore, the district court was correct in denying this motion.

■ Finally, Freeman challenges the district court's entry of judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure on her putative § 1981 claim. Freeman's complaint contains a single reference to 42 U.S.C. § 1981 under the heading "Jurisdiction and Venue." The two counts in the complaint specify Title VII as the statutory provisions violated by the Chicago Park District. On this basis, the district court found that the complaints did not allege a violation of 42 U.S.C. § 1981. Freeman now argues that she should have been given the opportunity to amend her complaint to state a § 1981 claim. However, we conclude that the jury's verdict in this case precludes her from pursuing a § 1981 claim.

■ An essential element of a § 1981 claim is that the defendant's actions be motivated by racially discriminato-

ry animus. *Hardin v. S.C. Johnson & Son*, 167 F.3d 340, 346 (7th Cir.1999). The jury specifically found that in the context of Freeman's Title VII claim, CPD was not motivated by racial discrimination. This finding has equal applicability to Freeman's § 1981 claim. *See Johnson v. City of Fort Wayne*, 91 F.3d 922, 940 (7th Cir. 1996) ("Although section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical.") (citing, *inter alia*, *Von Zuckerstein v. Argonne Nat'l Lab.*, 984 F.2d 1467, 1472 (7th Cir.1993)). A finding of lack of discriminatory animus on a Title VII claim will preclude recovery on a § 1981 claim. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1119 (7th Cir.1992) ("[A]s just discussed, the record before us establishes that McDonald's decision not to promote her to a full-time position until January, 1988, was not based on racial factors, but rather was the product of independent and lawful business considerations. Just as this conclusion dooms her claim under Title VII, so also is it fatal to her section 1981 claim."). While *Rush* involved summary judgment, it has equal application to a jury's verdict. The Seventh Amendment prohibits a second jury from being given the opportunity to render a verdict inconsistent with a prior jury's verdict. *Houseman v. United States Aviation Underwriters*, 171 F.3d 1117, 1126–27 (7th Cir.1999). The jury's conclusion that CPD did not discriminate on the basis of race bars any possible recovery under 42 U.S.C. § 1981. As such, we need not consider whether the district court correctly granted judgment on the pleadings.

For the foregoing reasons, we affirm the district court's entry of judgment in favor of the defendant.

---

3. CPD introduced the handbook in support of its argument that Freeman would have been terminated for violating CPD's policy regard-

ing confidential personnel records, as reflected in Question 6 of Special Verdict forms.