[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-10838
_____

D.C. Docket No. 0:10-cv-60712-RSR


JEANNINE V. DUCHATEAU,

Plaintiff - Appellant,

versus

CAMP, DRESSER & MCKEE, INC.,

Defendant - Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 9, 2013)

Before TJOFLAT and PRYOR, Circuit Judges, and ROTHSTEIN,* District Judge.

PRYOR, Circuit Judge:

This appeal requires that we decide whether direct estoppel bars a claim of

pregnancy discrimination under state law when a jury found at trial that the

---

*Honorable Barbara J. Rothstein, United States District Judge for the Western District of Washington, sitting by designation.

plaintiff, Jeannine DuChateau, suffered no adverse employment action regarding her claim of retaliation for exercising her right to maternity leave under federal law.  DuChateau filed a complaint that her former employer, Camp, Dresser & McKee, Inc., discriminated against her after she became pregnant.  DuChateau alleged that Camp removed her from a project for Lockheed Martin and failed to restore her to the project after she gave birth to her child and returned to work.  DuChateau alleged that these events gave rise to three claims for relief against Camp: (i) pregnancy discrimination under the Florida Civil Rights Act of 1992, Fla. Stat. §§ 509.092, 760.01–760.11, (ii) interference with her rights under the Family Medical Leave Act, 29 U.S.C. §§ 2601–2654, and (iii) retaliation for exercising her rights under the Leave Act.  The district court granted a partial summary judgment in favor of Camp on the first two claims.  At a trial on the third claim of retaliation, the jury found that DuChateau had not suffered an adverse employment action when Camp removed her from the Lockheed Martin project.  Because DuChateau is directly estopped from relitigating whether she suffered an adverse employment action when she was removed from the project for Lockheed Martin, we affirm the summary judgment against her claim of pregnancy discrimination.

2

# I. BACKGROUND

DuChateau worked as a "project lead" in the Management Consulting Division of Camp.  In 2008, DuChateau and other Camp employees began work on an environmental project for Lockheed Martin.  While she worked on the Lockheed project, Camp was considering her for the position of overall project manager.  In August 2008, DuChateau announced her pregnancy and her intention to take maternity leave in January 2009.

Later that August, DuChateau overheard Steve Brewer, the manager of Lockheed customer relations at Camp, tell another Camp employee that DuChateau was "irresponsible" for getting pregnant when she was supposed to manage the Lockheed project.  DuChateau complained about Brewer's comments to Phil Chernin, one of her supervisors.  DuChateau also spoke with Brewer.  Although Brewer did not give DuChateau the apology she sought, he did ask DuChateau to remain on the Lockheed project.  Brewer made no further comments with regard to DuChateau's pregnancy, but he ignored emails from DuChateau and failed to give her access to the electronic project-management tools.

In September 2008, Camp hired Nancy Wheatley to be the project manager for the remediation program of Lockheed, which included oversight of DuChateau's Lockheed project.  After Wheatley undertook her new position, it was determined that DuChateau would serve as deputy program manager of the

3

Lockheed project, a position that did not affect her compensation, benefits, or the terms of her employment.

During the fall of 2008, those individuals who worked on the Lockheed project were critical of DuChateau's work. Wheatley expressed concern about DuChateau's ability to manage the Lockheed project. Wheatley believed DuChateau was incompetent and lacked the "big picture perspective" necessary to manage the project. DuChateau stated that Lockheed had never expressed concerns about her work before Wheatley joined Camp.

On December 22, 2008, Stanley Plante, one of DuChateau's supervisors, told DuChateau that she had been removed from the Lockheed project. DuChateau alleges that Wheatley was the person who removed her from the project, but Wheatley denies that she made that decision. Plante told DuChateau that she should resign from the project and that other work would be found for her. After DuChateau's conversation with Plante, several Camp employees, including DuChateau, held a conference call about the Lockheed project. Brewer announced that Tom Pedersen, who had assisted with strategic development for the Lockheed project, would serve as interim deputy project manager during DuChateau's maternity leave. During the call, DuChateau interrupted Brewer and asked if she would be allowed to return to the project after her leave. DuChateau alleges Brewer did not respond to her.

4

The next day, DuChateau had a phone conversation with Wheatley that Wheatley described as "unpleasant." Wheatley stated that DuChateau was "ranting" throughout the conversation and said that she would not work on the Lockheed project again. After the conversation, Wheatley believed that DuChateau had resigned from the project. DuChateau argues that she never voluntarily resigned from the project. DuChateau stated that Wheatley asked her if she was going to resign from the project throughout the conversation, and DuChateau responded that she had already been removed from the project. On December 29, 2008, DuChateau wrote an email to Plante stating that she no longer wanted to work on the Lockheed project. DuChateau stated that she wrote this email only after Plante informed her that she was removed from the Lockheed project and instructed her to resign from it.

In January 2009, DuChateau began her maternity leave. Meanwhile, the Management Consulting Division of Camp experienced a significant decrease in its workload. Camp began layoffs, furloughs, and hour reductions for employees of the division. The role Camp played in the Lockheed project was also substantially reduced after new management at Lockheed decided to have their own personnel perform much of the work. Lockheed reduced the budget for Camp from $1.6 million to less than "several hundred thousand dollars."

5

In April 2009, DuChateau returned to work at Camp in the same position. Neither her duties, pay, nor benefits were changed.  Pedersen, in his position as deputy program manager for the Lockheed project, asked DuChateau if she wanted to work on the project.  Pedersen claims that DuChateau declined the offer, but DuChateau testified that she offered to help with any work available on the Lockheed project.

In June 2009, during an overall slowdown in the Management Consulting Division, DuChateau's hours were reduced from 40 hours a week to 32 hours a week.  Her hours were later reduced from 32 hours a week to 24 hours a week. DuChateau received an offer from a competitor of Camp and contacted Plante to see if Camp was conducting any voluntary layoffs.  DuChateau and Plante agreed that DuChateau would be laid off to allow her to receive a severance package. DuChateau received a severance package she considered "very fair."  A week later, she began work at her new job.

In April 2010, DuChateau filed a complaint against Camp in a circuit court of Florida, and Camp removed the action to the district court.  Count one of DuChateau's complaint alleged that Camp discriminated against her when it "remov[ed] her from the Lockheed Martin project because of her pregnancy and impending maternity leave."  Count three of DuChateau's complaint alleged that Camp retaliated against her in violation of the Leave Act when it "demot[ed] her

6

shortly before her leave was scheduled to begin . . . and [when it] fail[ed] to restore her to the position on the Lockheed Martin project she occupied prior to scheduling her [Leave Act] leave." Both DuChateau and Camp consented to a magistrate judge presiding over the action.

Camp moved for a summary judgment against DuChateau's complaint. The magistrate judge concluded that the Florida Act provided no cause of action for pregnancy discrimination and that Camp restored DuChateau to her previous position after she returned from maternity leave. The magistrate judge granted a partial summary judgment in favor of Camp on DuChateau's claims for pregnancy discrimination under the Florida Act and interference under the Leave Act. At a trial of DuChateau's claim of retaliation under the Leave Act, a jury returned a verdict in favor of Camp and found that DuChateau had not suffered an adverse employment action.

## II. STANDARD OF REVIEW

"We review a district court's grant or denial of summary judgment de novo." Brown v. Sec'y of State of Fla., 668 F.3d 1271, 1274 (11th Cir. 2012).

## III. DISCUSSION

DuChateau argues that the Florida Act provides a cause of action for pregnancy discrimination, but we need not decide that issue because the jury verdict against her claim of retaliation directly estops her claim of pregnancy

discrimination.  "Direct estoppel" is a form of issue preclusion that arises "within the confines of a single claim or cause of action."  18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4418 (2d ed. 2002).  When a party contests the pretrial dismissal of a claim and a jury rendered a verdict against the party on another claim, "[t]he jury's valid resolution of common issues is binding at trial of the untried claim, and may forestall the need for any further trial."  Id.  For example, in Freeman v. Chicago Park District, 189 F.3d 613 (7th Cir. 1999), the district court had entered a judgment on the pleadings against a claim of racial discrimination in contracting, 42 U.S.C. § 1981, but allowed a claim of racial discrimination in employment, id. § 2000e, to proceed to trial.  Freeman, 189 F.3d at 616.  The jury found that the employee's termination was not racially motivated.  Id.  Because both the untried claim and the tried claim required the plaintiff to prove a common issue of racial discrimination, the Seventh Circuit held that it need not "consider whether the district court correctly granted judgment on the pleadings" against the untried claim.  Id. at 618.  "The Seventh Amendment prohibits a second jury from being given the opportunity to render a verdict inconsistent with a prior jury's verdict."  Id.

The finding by the jury that DuChateau suffered no adverse employment action in her claim of retaliation bars a trial before another jury of her claim of pregnancy discrimination.  Even if there were a cause of action for pregnancy

8

discrimination under the Florida Act, it would be construed in the same manner as a cause of action for pregnancy discrimination under Title VII of the Civil Rights Act of 1964.  See Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998) ("The Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida [] Act, because the Florida [A]ct was patterned after Title VII.").  We have held that, to establish a prima facie claim of pregnancy discrimination under Title VII, a plaintiff must establish that "(1) she is a member of a protected group; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) employment or disciplinary policies were differently applied to her." Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1255 (11th Cir. 2012).  The jury verdict against her claim of retaliation estops DuChateau from relitigating the common issue whether she suffered an adverse employment action.  DuChateau's untried claim of pregnancy discrimination described the removal from the Lockheed project before she left for maternity leave as the adverse employment action, and her claim of retaliation described both her removal from the Lockheed project and the failure to restore her to the Lockheed project as her adverse employment action.  When the jury returned its verdict in favor of Camp and found that she had not suffered an adverse employment action, the jury necessarily found that neither DuChateau's removal from the Lockheed project nor the failure to restore her to the Lockheed project

9

was an adverse employment action, and direct estoppel bars DuChateau from retrying that issue of fact to another jury. See Freeman, 189 F.3d at 618. If a second jury were to find in a trial of her claim of pregnancy discrimination that DuChateau had suffered an adverse employment action when she was removed from the project, the verdicts of two juries would be "insurmountabl[y] inconsisten[t]." See Burger King Corp. v. Mason, 710 F.2d 1480, 1489 (11th Cir. 1983).

At oral argument, DuChateau argued that the phrase "direct estoppel" is not used by this Court, but this argument misunderstands our precedents. In United States v. Shenberg, 89 F.3d 1461 (11th Cir. 1996), we explained that, although "courts generally refer to the estoppel principles as collateral estoppel," "[i]n the context of a retrial,[] the term 'collateral estoppel' is a misnomer . . . [and] the term 'direct estoppel' more appropriately characterizes the application of estoppel principles," id. at 1478 (internal citation omitted). But our analysis "remains the same, whether we refer to the application of estoppel principles as 'direct' or 'collateral.'" Id. In Shenberg, we referred "to the estoppel principles collectively as collateral estoppel" to avoid confusion. Id. In United States v. Gil, 142 F.3d 1398 (11th Cir. 1998), we cited Shenberg for the proposition that, "[a]lthough the term 'direct estoppel' would perhaps be more accurate, this court has used the term 'collateral estoppel' to avoid confusion," id. at 1400 n.3. But neither decision

10

rejects the principle of direct estoppel, nor do they require us to avoid that term when, as here, the use of the term is not confusing.

DuChateau also argues that Camp retaliated against her in violation of the Florida Act, but she failed to plead that claim. DuChateau's complaint asserted three claims: (1) pregnancy discrimination under the Florida Act; (2) interference with her rights under the Leave Act; and (3) retaliation under the Leave Act. She failed to allege a claim of retaliation under the Florida Act. "[A]n issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) (internal quotation marks omitted).

## IV. CONCLUSION

We **AFFIRM** the grant of a partial summary judgment in favor of Camp for DuChateau's claim of pregnancy discrimination under the Florida Act.

11