[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-11230

_____

D.C. Docket No. 8:12-cv-02277-VMC-AEP

JOEZETTE HITE,

Plaintiff - Appellant,

versus

HILL DERMACEUTICALS, INC.,
a Florida corporation,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 6, 2015)

Before JORDAN and FAY, Circuit Judges, and WALKER,[*] District Judge.

PER CURIAM:

---

[*] The Honorable Mark E. Walker, United States District Court Judge for the Northern District of Florida, sitting by designation.

Joezette Hite appeals summary judgment granted to her former employer, Hill Dermaceuticals, Inc. ("Hill"), in her action alleging gender and pregnancy discrimination. We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Hill is a dermatological drug manufacturer and sales company, located in Sanford, Florida. Hill's primary customers are dermatology physicians, who prescribe its products to treat adult and pediatric scalp and skin diseases, such as psoriasis and severe acne. Hite was employed by Hill as a full-time pharmaceutical sales representative in February 2004. Her February 6, 2004, employment confirmation letter states: "As a Hill Sales Representative, you agree to represent the Hill product line exclusively and will never solicit business for any similar product or program of any other company and will not help or associate with any other distributor of similar products." Emp't Confirmation Letter, Feb. 6, 2004, at 2.

Hite's sales territory was the west coast of Florida, and she understood she was expected to call on ten to twelve physicians a day. She primarily sold three Hill products: (1) Derma-Smoothe Scalp, (2) Derma-Smoothe Body, and (3) DermaOtic Oil Ear Drops. In addition to her fixed salary, Hill paid Hite commissions on the number of prescriptions written by physicians for the products she sold.

During her employment with Hill, Hite reported to regional sales manager, Elizabeth Schmidt.  Hite reported weekly to Schmidt and provided information concerning her interactions with physicians, including the physician's name, date of her sales visit, and location.  Generally twice a year, a Hill regional sales manager would accompany sales representatives in calling on physicians to assess the representatives' sales techniques and effectiveness in interacting with company customers and to offer constructive critiques and advice.  Hill conducted quarterly sales meetings throughout the country that all full-time sales representatives were expected to attend.

On March 22, 2008, Hite gave birth to her first child.  She requested and was given eight weeks of maternity leave.  Thereafter, she returned to her full-time job as a sales representative.  Hite gave birth to her second child on March 11, 2010.[1]  She again requested and was given eight weeks of maternity leave.  While Hite was on maternity leave, she did not receive her salary but was covered by employee health care; she also continued to be paid commissions on sales from her territory.

During her 2010 maternity leave, Hite was informed she would need to attend a Hill quarterly sales meeting in Atlanta, Georgia, scheduled after her return

---

[1]  During the summer of 2009, Hite attended a Hill sales meeting in Orlando, where Schmidt asked her if she was pregnant.  Hite initially denied being pregnant, but later confirmed she was pregnant.  Schmidt asked Hite if she had planned the pregnancy; Hite responded the pregnancy was not planned.

from maternity leave.  Knowing of Hite's aversion to flying, Schmidt gave her the option of attending the managers' quarterly sales meeting in Orlando, Florida, on a date during Hite's maternity leave.  Hite, who was nursing her baby, chose the nearer Orlando meeting; she returned to work for one day to attend the Orlando meeting in late April 2010, after approximately six weeks of maternity leave; she then continued her maternity leave.  Hite returned to her job as a full-time sales representative for Hill with her same territory in May 2010.   Following Hite's return to work after maternity leave for both of her pregnancies, Schmidt accompanied Hite on her sales calls with physicians.

In June 2010, Hite was asked to sign an Agreement, dated June 1, 2010, which Hill required of all its employees.  The Agreement states Hite was "an 'at will' employee of Hill Dermaceuticals, Inc., . . . . [meaning] you may resign or Hill may terminate you for any reason at any time."  Hill Agreement, June 1, 1010, at 1. The Agreement informed employees of the confidential and proprietary nature of some of Hill's business information, required them to maintain the confidentiality of this information, and advised full-time employees they were expected to devote all of their professional work time and energies to their duties as Hill employees; they were not to sell or represent products of any other company.  In relevant part, the June 2010 Agreement states: "As a Hill sales representative, you agree to represent the Hill product line exclusively and to never solicit business for any

4

product or service of any other company." *Id.* at 2. Jerry S. Roth, Hill founder and president, signed the Agreement on June 2, 2010; Hite signed it on June 8, 2010.

Hite was still pumping breast milk, when she attended the Hill quarterly sales meeting in Orlando on October 7-8, 2010. Before the meeting began, Hite encountered Schmidt, who suggested Hite not leave the meeting to pump breast milk so that she would not be late in returning to the meeting, as she had been in previous sales meetings, when she was lactating. Schmidt further advised Hite might be berated at the meeting, if she left too many times to pump breast milk. Hite told Schmidt she would have to leave to pump milk, if she needed to do so. When Schmidt asked what would happen if she did not pump milk, Hite explained she would leak on her dress. Schmidt responded: "Well, it's a good thing you have long hair, cover it up." Hite Dep. at 31. Hite testified this conversation with Schmidt affected her disposition at the meeting; she did not participate in the discussions and was in pain toward the latter part of the meeting. *Id.* Nonetheless, Hite did not tell anyone in authority at Hill about Schmidt's comments to her. At the conclusion of the October 2010 sales meeting, Schmidt told Hite it appeared she had not been paying attention at the meeting, and her eyes appeared "glazed over." *Id.* at 32. She also informed Hite her sales numbers had dropped. Schmidt told Hite she needed to see more effort and better sales results from her.

5

On October 5, 2010, Hite and her husband opened Crave Nail Spa in Tampa, Florida. The spa offered nail, waxing, and facial services and sold bath products and lotions. The website for Hite's nail spa, titled "You Crave Gorgeous Skin," advertised its organic skin-care products were free of parabens, a preservative added to Hill's products. The website stated parabens have been linked to breast cancer and reproductive problems; Hite did not investigate the accuracy of these statements, which she had found on the Internet. She testified at her deposition she knew Hill sold products containing parabens.

At the time Hite opened the nail spa, her sales numbers for Hill had suffered. In her deposition testimony, Hite admitted interrupting her Hill workday to promote her new business on a local television station through an interview at Crave Nail Spa on October 15, 2010. On Friday, November 5, 2010, Schmidt told Hite in a telephone-conference call, including Howard Kaplan, Hill national sales manager, that neither Hite's sales nor daily and weekly visits with physicians had improved. She gave Hite two options: (1) agree to a 60-day probationary period, while she improved her sales results, or (2) resign, sign a release, and receive six weeks of severance pay. Hite requested time to consult with her husband over the weekend, which was accorded.

Hite left a telephone message for Schmidt on Monday, November 8, 2010, and stated she was ill and would not be able to work that day. But Hite was not

6

sick and instead met with an attorney.  In the interim, Kaplan had discovered Hite's Crave Nail Spa through an online search.  He noticed the disparaging comments about parabens, preservatives routinely added to Hill's products to extend shelf life.  Schmidt, Kaplan, and Roth consulted and agreed Hite's new business offered skin-care products potentially competitive with the prescription products Hill manufactured and sold.  They further determined Hite's new business had distracted her from her responsibilities for Hill, in violation of her June 2010 Agreement with Hill.  Following consultation with counsel for Hill, they decided Hite should be terminated immediately.

By text message on Tuesday, November 9, 2010, Hite communicated to Schmidt she had decided to accept the option of continued employment on the 60-day probationary period.  On Wednesday, November 10, 2010, Schmidt and Kaplan were on a conference call, when Schmidt told Hite the option was no longer available.  Instead, she was terminated immediately, because of her competing side business.

Hite filed this action against Hill and asserted gender discrimination (Count I) and pregnancy discrimination (Count II) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 and 2000e(k) and the Florida Civil Rights Act, Fla. Stat. § 760.10 ("FCRA").  She also stated a claim for interference and retaliation (Count III) under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.

("FMLA").[2]  In granting summary judgment to Hill, the district judge concluded Hite had failed to establish a prima facie case of gender or pregnancy discrimination.

## II. DISCUSSION

On appeal, Hite argues summary judgment for Hill on her gender and pregnancy discrimination claims was error, because she was replaced by a female who was not pregnant or experiencing a protected medical condition.[3]  She contends she proffered sufficient evidence of being harassed because of her pregnancies and need to lactate.  She further argues the products sold at her nail spa did not compete with the products she sold for Hill.  Consequently, she maintains she did not violate the June 2010 Agreement she had signed with Hill.

"We review the grant of summary judgment de novo."  *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1321 (11th Cir. 2014).  Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case."  *Hickson Corp. v. N. Crossarm Co.*,

---

[2] Hite does not challenge on appeal summary judgment for her FMLA claim.  Therefore, her arguments regarding the FMLA are abandoned. *Campaign for a Prosperous Ga. v. S.E.C.*, 149 F.3d 1282, 1287 (11th Cir. 1998).

[3] Hite was replaced by Olivia Stasiak, who had a three-year-old child at the time of Schmidt's deposition on June 27, 2013.  Consequently, her child was born sometime in 2010, as was Hite's second child.  Hite was terminated in November 2010 and replaced thereafter by Stasiak.

357 F.3d 1256, 1259-60 (11th Cir. 2004). "Although all justifiable inferences are to be drawn in favor of the nonmoving party, the moving party is entitled to judgment as a matter of matter of law when the nonmoving party fails to make a sufficient showing of an essential element of the case." *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 636 (11th Cir. 1991). FRCA claims are analyzed using the same standards as Title VII. *DuChateau v. Camp, Dresser & McKee, Inc.*, 713 F.3d 1298, 1302 (11th Cir. 2013). Accordingly, we need not address Hite's FCRA claims separately. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

Title VII "prohibits various forms of employment discrimination, including discrimination on the basis of sex." *Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 276-77, 107 S. Ct. 683, 687 (1987); *see* 42 U.S.C. § 2000e-2(a)(1) (precluding discrimination "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex"); Fla. Stat. § 760.10(1)(a). In 1978, Congress amended Title VII with the Pregnancy Discrimination Act, which provides "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k); *see Delva v. Cont'l Grp., Inc.*, 137 So.3d 371, 375-76 (Fla. 2014) (holding the FRCA prohibition against sex discrimination includes "discrimination

9

based on pregnancy"). A plaintiff may prevail on a Title VII claim "by showing that her pregnancy 'was a motivating factor' for an employment decision." *Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012) (citing 42 U.S.C. § 2000e-2(m)). A plaintiff may use direct or circumstantial evidence to prove her case. *Id.* While we are troubled by the comments Hite attributes to Schmidt concerning her pregnancies, the determinative cause for terminating Hite by Hill's executive decisionmakers, Schmidt, Kaplan, and Roth, was Hite's violation of the company's June 2010 Agreement by opening and promoting a side business that sold products they considered to be competitive with Hill's products.

Since Hite has failed to show her pregnancies were the cause of her termination by direct evidence, we must decide if she has proved her case of pregnancy discrimination by circumstantial evidence under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008). Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. "[O]nce a plaintiff makes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." *Holland*, 677 F.3d at 1055 (internal quotation marks omitted). After the employer meets this burden, the plaintiff must prove the employer's stated reason is a pretext for unlawful discrimination. *McCann*, 526

F.3d at 1373. When "the proffered reason is one that might motivate a reasonable employer," a plaintiff "must meet that reason head on and rebut it"; the plaintiff "cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000). To prove pretext and avoid summary judgment, the plaintiff must show the employer's proffered reason is false, and discrimination was the real reason for the adverse action. *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006). Under Title VII, a plaintiff has "the ultimate burden of proving discriminatory treatment by a preponderance of the evidence." *Crawford v. Carroll*, 529 F.3d 961, 975-76 (11th Cir. 2008) (internal quotation marks omitted).

"[T]o establish a prima facie claim of pregnancy discrimination under Title VII, a plaintiff must establish that (1) she is a member of a protected group; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) employment or disciplinary policies were differently applied to her." *DuChateau*, 713 F.3d at 1302 (internal quotation marks omitted). Assuming Hite has established a prima facie case of pregnancy discrimination, the *only reason* Schmidt gave Hite for her termination was the discovery of her competing business by internet and television advertisement, which violated Hill's noncompetition policy applied to all its employees. The district judge alternatively recognized Hite

11

had failed to rebut Hill's legitimate, nondiscriminatory reason for terminating her for violating the noncompetition provision of the June 2010 Agreement:

> Hite has offered no evidence to show that Hill Dermaceuticals' justification for her termination is unworthy of credence. Hill Dermaceuticals perceived Hite's ownership of a nail salon to be a violation of her agreement. Not only did Hite solicit business for the products and services of another company—Crave—but she did so by participating in a television interview during a regular workday for Hill Dermaceuticals. Furthermore, Crave's website, the content of which Hite admittedly approved, contained information which Hite's superiors perceived to disparage Hill Dermaceuticals' products.

Summ. J. Order at 25 (citation omitted); *cf. Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999) ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct."). No Hill employee had opened such a competitive business after signing the June 2010 Agreement, containing the noncompetition provision, as Hite had done.

In addition, Hite's June 2010 Agreement with Hill, signed by Roth for Hill and Hite, provides: "As an 'at will' employee, you may resign or Hill may terminate you for any reason at any time." June 2010 Agreement at 1. We have recognized at-will employment may be terminable with or without cause or justification. *Whitfield v. Finn*, 731 F.2d 1506, 1508 (11th Cir. 1984). Hite has failed to show that Hill's legitimate, nondiscriminatory reason for terminating her

for violating the noncompetition provision of the June 2010 Agreement was a pretext for pregnancy discrimination.  Therefore, summary judgment properly was granted to Hill.

**AFFIRMED.**