TOWNSHIP OF WEXFORD *v.* SEELEY.

1. PRINCIPAL AND AGENT—RATIFICATION—ESTOPPEL.
   A principal cannot take the fruits of a contract made by his agent without authority and not be bound by its terms.

2. BANKS AND BANKING—PARTNERSHIP — BONDS — PRINCIPAL AND AGENT—RATIFICATION—EVIDENCE—SUFFICIENCY.
   In an action on a township treasurer's bond, which was signed for a banking partnership as surety, by an employee, in the absence of the active partner having the management of the business, for the purpose of obtaining a share of township funds to be deposited by the treasurer, where such active partner upon his return knew of such

act and deposits were received by the bank during the term of the bond, some of which were received by the active partner personally, and the township board received no notice of any claim that the bond was invalid, evidence *held*, sufficient to sustain a finding that such active partner ratified the act of the employee in signing the bond.

3. PARTNERSHIP—SCOPE OF AUTHORITY—PRINCIPAL AND AGENT.

Although each partner of a copartnership is the agent for his copartners in the transaction of the partnership business, one partner cannot bind his copartner by any act without the scope of the partnership.

4. BANKS AND BANKING—PARTNERSHIP — SCOPE OF AUTHORITY — PUBLIC MONEYS—SURETY BONDS—CONSIDERATION.

It is within the scope of the business of a banking partnership to obtain deposits of public money deposited by a township treasurer and to sign the official bond of such treasurer in consideration therefor.

5. SAME—PARTNERSHIPS—UNAUTHORIZED ACTS OF PARTNER—RATIFICATION.

The ratification of the unauthorized act of an employee of a banking partnership in signing the official bond of a township treasurer for the purpose of securing a share of the township funds by the partner having active charge of the business is binding upon his copartner.

Error to Wexford; Lamb, J. Submitted April 9, 1917. (Docket No. 108.) Decided May 31, 1917.

Assumpsit by the township of Wexford against John Seeley and others on a statutory bond. Judgment for plaintiff. Defendants bring error. Affirmed.

*Covell & Cross* and *William H. Yearnd,* for appellants.

*Fred C. Wetmore,* for appellee.

Defendant Seeley was treasurer of plaintiff township, beginning his term in April, 1915. This action is upon his official bond to recover a shortage of $2,-637.61, which he was unable to produce at the time

of his settlement with the township board in the spring of 1916, due to the failure of the Wexford Bank. Defendants David W. Walker and Fred R. Walker, who are partners conducting a banking business, under the name of the Buckley Bank, alone dispute liability. David W. Walker is the active member of this partnership and has the entire management of the business. They have in their employ in the bank Mr. J. Warren Brown, who has the title of assistant cashier, and who married the foster daughter of David W. Walker. The bond sued upon was signed in the firm name by Mr. Brown as assistant cashier during David's absence in California, under an arrangement that the township treasurer should deposit a portion of the township's funds with the partnership, the funds to be deposited as evenly as possible with the three partnerships operating private banks, and who are sureties on the treasurer's bond and are defendants here. Mr. Brown wrote David W. Walker of his action in signing the bond and the arrangement made with reference to the deposit of funds and upon David's return told him again about it. As the point is made that the findings of fact are not supported by the testimony, we quote from the record.

Defendant Seeley was called as an adverse witness by the plaintiff, and among other things testified:

"*Q.* Did you have any talk with Mr. Brown, at that time, in regard to deposits in the Buckley Bank?

"*A.* Yes, he said he expected a share of them, and I agreed to give him a portion of the bond, or the money, an equal share as near as I could.

"*Q.* Well, what did you do as a matter of fact?

"*A.* Well, I deposited the money in his bank and also in Mr. Crimmins' bank, just as I had agreed to, just as evenly as I could.  *  *  *

"*Q.* This money which you deposited there, I suppose was deposited along from time to time during the year.

"*A.* Yes, sir.

"*Q.* Did you do any business along that line with Mr. Walker himself?

"*A.* Yes, sir."

J. Warren Brown was called as an adverse witness by the plaintiff, and testified, in part, as follows:

"*Q.* You had some talk with him (Seeley) about the matter of deposits in your bank at that time, didn't you?

"*A.* Yes.

"*Q.* At the time you signed the bond?

"*A.* Yes.

"*Q.* What was the talk?

"*A.* Well, that he would deposit a portion of the taxes in our bank.

"*Q.* Well, the talk or the understanding was, wasn't it, that the money of the township was to be deposited in those three banks?

"*A.* Yes, sir.

"*Q.* As nearly evenly as possible? Was that the talk and understanding?

"*A.* I don't remember about that part.

"*Q.* Well, that is the reason you signed the bond, wasn't it?

"*A.* Yes, sir; it was.

"*Q.* And your bank did receive deposits?

"*A.* Yes, sir.

"*Q.* From that time on until the end of the year?

"*A.* Yes.

"*Q.* That is, till the next April, the expiration of the treasurer's term of office?

"*A.* Yes, sir.

"*Q.* When did you report this arrangement to Mr. Walker?

"*A.* I think I wrote to him about it soon after I signed it. * * *

"*Q.* And you knew, and you told Mr. Walker, didn't you, that those deposits were to be made there as a part of the arrangement in connection with this bond?

"*A.* I never stated it in that way.

"*Q.* Well, maybe I haven't stated it exactly correctly, but that is the effect?

"*A.* We received the deposits; yes, sir.

"*Q.* Well, now, it is a fact, isn't it, and you have

already sworn it was, that that was the arrangement at the time you signed the bond, and that that was one of the reasons why you signed it?

"A. Yes, sir.

"Q. And you told Mr. Walker that, didn't you?

"A. Yes, sir."

Township money was deposited with the copartnership from time to time during the year, on occasions, the money being accepted for deposit by David W. Walker personally. While he stated to Brown, and might have stated to others, that he did not think he or the partnership was bound on the bond, he made no such claim to any member of the township board and gave them no notice that the arrangement made between Brown and Seeley was not satisfactory to him and the firm.

The case was tried without a jury before Judge Lamb, who filed findings of fact and conclusions of law. The following appears in the findings of fact:

"The bond was executed by the Buckley Bank on condition that a portion of the funds coming into the hands of the township treasurer would be deposited in said Buckley Bank. This was called to the attention of Mr. David W. Walker, on his return from the west. The township treasurer did deposit a portion of the funds coming into his hands as township treasurer in the Buckley Bank, and the said David W. Walker as cashier thereof took in some portion of the said deposit in person.   *   *   *

"The cashier and active copartner in the Buckley Bank, Mr. David W. Walker, after full knowledge of all the material facts, continued to receive the deposits from the township treasurer and to accept the benefits thereof, took no steps to disaffirm the contract, gave no notice to the township board of Wexford township nor to any of its members that the Buckley Bank did not consider itself liable on said bond. In view of these conditions and circumstances, the contract must, as a matter of fact, be held to have been impliedly ratified by David W. Walker for the Buckley Bank."

Judgment passed against all the defendants, and David W. Walker and Fred R. Walker bring the case here.

FELLOWS, J. (*after stating the facts*). The findings of fact are abundantly supported by the testimony. The treasurer, Mr. Seeley, and assistant cashier, Mr. Brown, agree in their testimony as to the making of the arrangement whereby, in consideration of the signing of the bond sued upon, a portion of the township funds were to be deposited with the Buckley Bank. The two other banks had already signed the bond when it was presented to Mr. Brown; his principal was in California; and it was apparent to him, as appears by his testimony, that unless he signed the bond for the partnership the Buckley Bank would get none of the township's funds. He had been given no authority to sign bonds for the partnership; indeed, the testimony would indicate that his authority to act for the partnership was very limited. Nevertheless, he signed this bond; he did not thereby bind the partnership, unless his acts were subsequently ratified. He was an adverse witness called by the plaintiff, and it was only under pressure that he gave some of the testimony above set forth. Under the circumstances, the trial court was fully justified in finding that the arrangements between Seeley and Brown were made, and that David W. Walker was made cognizant of the facts immediately on his return. Mr. Walker had not authorized the signing of this bond; neither he nor the partnership was then bound by the arrangement made by Brown; he could decline to carry it out, and no action could be maintained against him, or the partnership. But he could not take the fruits of the contract, its benefits, and not be bound by its terms. If he appropriated the contract and ratified it, it was the same as though he had authorized it in

the first instance. Did he impliedly ratify this contract as found by the court? We think he did.

"Ratification takes place when one person adopts a contract made for him, or in his name, which is not binding on him because the one who made it was not duly authorized to do so. Ratification is a question of fact; and, in the great majority of instances, turns on the conduct of the principal in relation to the alleged contract or the subject of it, from which his purpose and intention thereabout may be reasonably inferred." Story on Agency, §§ 253-260. "And, generally, deliberate and repeated acts of the principal, with a knowledge of the facts, that are consistent with an intention to adopt the contract, or inconsistent with a contrary intention, are sufficient evidence of ratification." *Oregon R. Co.* v. *Navigation Co.*, 28 Fed. 505.

Mr. Walker personally continued to receive deposits with full knowledge of the contract under which they were made, knowing full well that the township relied upon the bond signed in the name of the Buckley Bank. For the period covered by the bond—the term of the treasurer—the Buckley Bank had the funds of the township deposited there pursuant to the contract made with Brown in Walker's absence, but communicated to him immediately on his return about May 1st. No claim was ever made by Walker, or any one in his behalf to the obligee, that the bond was invalid, no claim that he and the copartnership were not bound by its terms. Every act of Walker's was consistent with ratification, no act of his was inconsistent with ratification; every act of his was inconsistent with repudiation of the contract, no act of his was consistent with its repudiation. The court below correctly found that he had impliedly ratified the contract. We must therefore determine the case as if David W. Walker had actually signed the partnership name to the bond in question.

Is the partnership bound? Fred R. Walker took

no part in the management of the bank; that was left entirely with David W. There is no testimony that Fred R. authorized or had any knowledge of this transaction. His liability in this action must depend on whether he is responsible for the action of David W. The rule is too well established to need citation of authorities that one partner cannot bind his copartner by any contract without the scope of the partnership, that each partner is the agent for his copartners in the transaction of the business of the copartnership, but not as to matters foreign to such business. Was this transaction within the scope of the partnership business? The business of the copartnership was banking; the purpose of this contract, the obtaining of a deposit of public funds with this copartnership. There was nothing illegal about the contract, nothing that contravened the public policy of the State. On the contrary, the public policy of the State contemplates the giving of bonds by banks to secure the deposits of public funds. Section 1408, 1 How. Stat. [2d Ed.] (1 Comp. Laws 1915, § 2134), which provides for deposit of township funds in banks and the giving of bonds to secure such deposits; section 9912, 4 How. Stat. [2d Ed.] (2 Comp. Laws 1915, § 5693), which makes similar provisions with reference to the deposit of school funds; sections 1049-1057, 1 How. Stat. [2d Ed.] (1 Comp. Laws 1915, §§ 2377-2385), which provides for the deposit of county funds in banks, the giving of bonds to secure such deposits, requires competitive bidding for the deposit, and is made applicable to "any institution doing a banking business, whether incorporated or not"; section 808, 1 How. Stat. [2d Ed.] (1 Comp. Laws 1915, § 289), requiring bonds of banks for State funds deposited with them.

All of this legislation indicates the policy of the State that public funds shall be deposited in banks,

and recognizes the giving of bonds by banks to secure such deposits, as a proper incident to the banking business. With what force can it be urged that obtaining the deposit of public money with a banking copartnership and signing a bond to insure its safe return is foreign to the banking business? A deposit of public money is a desirable one for any banking institution; it is usually larger in amount than private deposits and continues through the year. In the instant case, it bore no interest; whatever benefit there was from the deposit was a benefit to the copartnership. The contract was as clearly within the scope of the business as would be a contract to pay interest to secure the deposit, or to pay for advertising in the village paper to secure the same results. The contract was within the scope of the banking business, and the copartnership was bound by it.

We have examined the other assignments of error and find them without force.

The judgment is affirmed, with costs to plaintiff.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.