*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

LAW OFFICES OF JEFFREY SHERBOW, PC,

  Plaintiff-Appellant/Cross-Appellee,

v

FIEGER & FIEGER, PC, doing business as FIEGER, FIEGER, KENNEY & HARRINGTON, PC,

  Defendant-Appellee/Cross-Appellant.

FOR PUBLICATION
July 13, 2023
9:05 a.m.

No. 360582
Oakland Circuit Court
LC No. 2015-147488-CB

---

LAW OFFICES OF JEFFREY SHERBOW, PC,

  Plaintiff-Appellee,

v

FIEGER & FIEGER, PC, doing business as FIEGER, FIEGER, KENNEY & HARRINGTON, PC,

  Defendant-Appellant.

No. 361567
Oakland Circuit Court
LC No. 2015-147488-CB

---

Before: CAMERON, P.J., and BORRELLO and O'BRIEN, JJ.

O'BRIEN, J.

This is the second time that this contract dispute concerning referral fees between law firms has made its way through our appellate courts. The parties' first appeal followed a jury trial at which plaintiff, Law Offices of Jeffrey Sherbow, PC (Sherbow), prevailed on one of four claims. Our Supreme Court eventually affirmed the jury's verdict with respect to three of Sherbow's claims, but vacated the jury's verdict with respect to Sherbow's fourth claim and ordered a new trial. *Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, 507 Mich 272, 277; 968 NW2d 367 (2021) (*Sherbow II*). When the case returned to the trial court, the parties filed a flurry of motions, including competing motions for summary disposition. In denying the parties' motions for summary disposition, the trial court reasoned that, because our Supreme Court remanded for a

-1-

new trial, the trial court was required to hold a trial, and therefore could not entertain motions for summary disposition. We hold that this reasoning was erroneous. When an appellate court orders a new trial, that includes all phases of trial, including all pretrial matters such as motions for summary disposition. Because only defendant, Fieger & Fieger PC (the Fieger Firm), contests the denial of its motion for summary disposition, we vacate the trial court's order to the extent that it denied the Fieger Firm's motion for summary disposition, and remand for the trial court to address the merits of that motion consistent with this opinion.

The parties otherwise dispute three of the trial court's rulings after remand that we must address before the case is remanded. In two rulings, the trial court denied Sherbow's requests for a determination of whether collateral estoppel barred the relitigation of certain issues decided at the first trial. In denying the motions, the trial court reasoned, in part, that collateral estoppel was only available in subsequent actions. We reject this reasoning, and hold that collateral estoppel may arise within the confines of a single cause of action. Addressing the substance of Sherbow's motions, we hold that the trial court properly denied one of the motions, but should have granted the other. The Fieger Firm also contests the trial court's grant of Sherbow's motion to limit the testimony of a key witness. For the reasons explained in this opinion, we reverse that order as well.

## I. BACKGROUND

The basic facts of this case are explained in detail in both the Supreme Court's opinion, *Sherbow II*, and this Court's opinion, *Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, 326 Mich App 684; 930 NW2d 416 (2021) (*Sherbow I*), aff'd in part and rev'd in part by *Sherbow II*. For convenience, the facts and procedural history as stated in *Sherbow II* are as follows:

> Jeffrey Sherbow was the sole proprietor of his law office, which is the plaintiff in this case. In 2011, he consulted with Charles Rice (Rice) on a few legal matters involving Rice's nonprofit organization. More meetings were scheduled for July 2012, but on July 13 of that year, Rice was killed in a car accident in Ohio. Also in the car were Mervie Rice (Mervie), Phillip Hill, and Dorothy Dixon, who was Rice's partner and the mother of his son, Dion Rice (Dion). These three injured parties plus Rice's estate are the four clients involved in the present case.
>
> On the day of the accident, Dion called his father's organization and asked for Sherbow's contact information. Jennifer Hatchett, who worked for Rice's organization, provided the information and then called Sherbow to inform him about the accident and that Dion was looking to speak with him. Sherbow spoke with Hatchett for about one minute, and Sherbow then called Jeffrey Danzig, a partner at defendant, Fieger & Fieger, PC (the Fieger Firm), and head of the Fieger Firm's intake department, to notify him about the potential case concerning the car accident. Sherbow and Dion did not speak until the following evening when Sherbow called Dion. Over the following week, Sherbow spoke with Dion a few times and they met in person. Dion testified that at the meeting, he told Sherbow that he intended to use the Fieger Firm and, in fact, had already called the Firm. Evidence also existed indicating that Mervie had contacted the Fieger Firm on her own.

At a meeting at the Fieger Firm's office on July 26, Sherbow and Danzig met with, among others, Dion and Mervie. Hill did not attend the meeting and neither did Dixon, who remained in a coma. Danzig and Sherbow both testified that Danzig explained that Sherbow would receive a referral fee with regard to the four clients and that no one objected. Mervie testified she did not recall any such explanation and that, although she did not object at the meeting, she would have if she had been told about the agreement. Dion testified that he could not remember if a referral fee was discussed at the meeting.

At the meeting, Mervie signed a retainer agreement with the Fieger Firm, as did Dion on behalf of Rice's estate. Dion also agreed to the Fieger Firm's representation of his mother, Dixon. Danzig later went to Hill's apartment and obtained a signed retainer agreement. Again, there was conflicting testimony about whether the referral fee was mentioned to Hill; Danzig said he explained it, and Hill denied hearing about it. For his part, Sherbow did not meet with or speak to Hill until the present case was in the discovery stage. Sherbow also acknowledged that he had not met or talked to Mervie until the July meeting. Dixon, after awakening from her coma, was informed by her son Dion that the Fieger Firm had been retained. Danzig visited her and explained that the Fieger Firm was representing her—Danzig and Dixon disputed at trial whether he told her of the referral arrangement. Dixon did not speak to Sherbow until the present case arose.

Three letters between Danzig and Sherbow form the referral agreement. The first two letters confirm that Sherbow was entitled to one-third of the attorney fees; the last letter readjusted this down to 20% because the local counsel in Ohio (where the underlying case proceeded) wanted more than the 10% he had agreed to take. When Danzig left the firm in 2014, Sherbow confirmed the agreements with another Fieger Firm partner, Robert Giroux, who assured Sherbow that he would get paid.

Sherbow did no work on the case. In 2015, he learned that the Fieger Firm had prevailed in the underlying action, winning an award of $10,225,000, with the contingent fee totaling $3,408,333.34. Sherbow inquired about his portion of the fee, and Geoffrey Fieger (Fieger) responded that while he originally believed Sherbow had referred the case, Fieger had since learned that Mervie and Dion had contacted the office on their own and that Hill and Dixon did not even know Sherbow. Fieger indicated that the referral fee would not be paid. Later, Fieger obtained four identical affidavits from each of the clients attesting that Sherbow never represented them, that they did not want him to get a referral fee, that he did not work on the case, and that he did not refer them to the Fieger Firm.

Sherbow filed the present complaint in June 2015. In July 2016, the Fieger Firm sought partial summary disposition under MCR 2.116(C)(10), arguing among other things that the agreement violated MRPC 1.5(e). The trial court denied the motion, determining, in relevant part, that MRPC 1.5(e) did not require the referring attorney to have a written agreement with the client in order to split a fee and that

the Fieger Firm's contention that the agreement was void as against public policy was an affirmative defense on which the Fieger Firm carried the burden.

A trial was held in February and March 2017. Despite its earlier ruling to the contrary, the trial court instructed the jury—over Sherbow's objection—that Sherbow had to prove by a preponderance of the evidence that each client was Sherbow's client in order to recover a fee for referring that client. The trial court defined "client" as "a person or entity that employs a professional for advice or help in that professional's line of work, especially one in whose interest a lawyer acts as by giving advice, appearing in court or handling the matter." Question 1 on the jury verdict form asked whether a professional relationship existed. Question 2 stated, "If yes to any part of 1, did plaintiff refer one, some, or all or the following personal injury cases to Defendant?" The jury found that only Dion, on behalf of Rice's estate, was a client of Sherbow, who was awarded $93,333.33.

Sherbow appealed, contending among other things that the trial court erred by instructing the jury that the clients needed to have an attorney-client relationship with him in order for him to refer them and that the trial court erred by placing the burden of proving compliance with MRPC 1.5(e) on him. The Fieger Firm responded that the agreement violated MRPC 1.5(e) and, thus, was void as against public policy.

The Court of Appeals affirmed in part, reversed in part, vacated in part, and remanded. The Court determined that the trial court erred in its jury instructions on MRPC 1.5(e), holding that contrary to the instructions given to the jury, that rule does not require the referring attorney to have an attorney-client relationship with the client. With regard to the burden of proof, the Court of Appeals concluded that the public-policy argument constitutes an affirmative defense and, as such, the defendant bears the burden of providing supporting evidence. Once such evidence has been introduced, the burden shifts to the plaintiff to produce clear and decisive evidence negating the defense. Given that determination, the Court held that the trial court erred by instructing the jury that Sherbow, as plaintiff, bore the burden. Finally, the Court concluded that these errors affected the outcome and therefore required retrial.

Both parties sought leave to appeal in [the Supreme] Court. [The Supreme Court] granted the Fieger Firm's application and . . . held Sherbow's in abeyance for resolution of the questions posed here, namely, whether MRPC 1.5(e) requires an attorney-client relationship, who has the burden of proving violations of that rule, and whether any errors below require reversal of the jury verdict. [*Sherbow II*, 507 Mich at 278-282 (citations omitted).]

MRPC 1.5(e) provides:

A division of a fee between lawyers who are not in the same firm may be made only if:

(1) the client is advised of and does not object to the participation of all the lawyers involved; and

(2) the total fee is reasonable.

After a lengthy review of this rule's history and "context," our Supreme Court held that MRPC 1.5(e) requires the referring attorney to have an attorney-client relationship with the individual he or she refers, despite no such requirement appearing in the rule's text. *Sherbow II*, 507 Mich at 284-302. Accordingly, contrary to this Court's holding, our Supreme Court ruled that the trial court did not err by instructing the jury that a professional relationship was required to enforce the referral agreement. *Id*. at 302.

The Supreme Court next agreed with this Court that the trial court erred by failing to instruct the jury on the proper burden of proof. The Court reasoned that the Fieger Firm's argument challenging the referral agreement as void against public policy because it violated MRPC 1.5(e) was an affirmative defense, and as such, the Fieger Firm, as the defendant, bore the burden of proof. *Id*. at 307. Thus, "[t]he trial court's instruction that Sherbow, as plaintiff, bore the burden of proof on this point was erroneous." *Id*.

The Court then analyzed whether this error required reversal. As to Sherbow's claims with respect to Rice's estate, Mervie, and Hill, the Supreme Court concluded that the error did not require reversal. *Id*. at 310-311; *id*. at 312 n 80. But the Court ruled otherwise with respect to Dixon, explaining:

> As with Mervie and Hill, there is no dispute that Sherbow did not actually speak with Dixon about the case before the "referral" occurred. But that was because Dixon remained in a coma during the relevant period. Sherbow's argument, therefore, is that Dion acted on behalf of Dixon, just as he had acted on behalf of Rice's estate. Consequently, Sherbow concludes, the jury's finding that Dion was Sherbow's client on behalf of the estate also supports a finding that Dion was Sherbow's client on behalf of Dixon. In other words, Sherbow's referral of Dion to the Fieger Firm created a sufficient relationship between Sherbow and both the estate and Dixon.
>
> Unlike with Mervie and Hill, there is evidence that could support such a conclusion. At the July 2012 meeting in the Fieger Firm's office, Dion did agree to the Fieger Firm's representation of Dixon even though she remained in a coma. Moreover, at trial, Dion agreed that when he spoke with Sherbow, he was looking for guidance as it related to his family. Given this evidence and the fact that the jury found that Sherbow's interactions with Dion were enough to create an attorney-client relationship with Rice's estate, we cannot say with any certainty that a jury properly instructed on the burden of proof would find that those same interactions with Dion were insufficient to establish an attorney-client relationship with Dixon. Accordingly, we conclude that the erroneous jury instructions prejudiced Sherbow as it relates to Dixon. A new trial is therefore warranted as to Sherbow's claim regarding a referral fee for Dixon. [*Id*. at 311-312.]

When this case returned to the trial court, the parties filed a number of motions—Sherbow filed five motions, including one motion for summary disposition, and the Fieger Firm filed a competing motion for summary disposition. The trial court denied the parties' motions for summary disposition in the same order for the same reason, explaining:

> The State's highest Court has unanimously remanded this matter for a trial for the portion of the fee Sherbow seeks for referring Dixon, and that is precisely what this Court will do. If either party desires relief from the Supreme Court's order, that is a matter for the respective party to pursue with the Supreme Court. As such, the Plaintiff's Motion for Summary Disposition . . . and Defendant's Motion for Summary Disposition Pursuant to MCR 2.116(C)(10) are **DENIED**.

As for Sherbow's other motions, as relevant to this appeal, Sherbow argued that (1) the only issue to be tried on remand was whether Sherbow's interaction with Dion was sufficient to create an attorney-client relationship with Dixon because, in the previous trial, the jury necessarily found that there had been a disclosure of the fee-sharing arrangement to Dion and Dion did not object to that arrangement; (2) the Fieger Firm was collaterally estopped from arguing that Danzig colluded with Sherbow to defraud the Fieger Firm because the jury in the first trial necessarily rejected that argument when it found that Danzig had actual or apparent authority to bind the Fieger Firm; and (3) Dixon's testimony was irrelevant and should be excluded because, again, the only issue to be tried on remand was whether Sherbow's interaction with Dion, acting on behalf of Dixon, was sufficient to create an attorney-client relationship with Dixon, and Dixon was in a coma at that time.

The trial court denied Sherbow's first two arguments because (1) consideration of Sherbow's argument was inconsistent with the Supreme Court's remand for a new trial, (2) it believed that collateral estoppel was inapplicable as this is not a subsequent action, and (3) it concluded that the issues identified in Sherbow's motions were not necessarily tried in the previous trial.

The trial court agreed with Sherbow's third argument in part. It concluded that, because "Dixon was in a coma at the time the alleged creation of the attorney client relationship at issue," her testimony was only relevant to establishing that fact, and any testimony beyond establishing that fact would "be irrelevant under MRE 401 and MRE 402[,] and its introduction would certainly be excludable under MRE 403 . . . ."

The parties each filed an application for leave to appeal the trial court's rulings on their various motions, both applications were granted, and the appeals were consolidated.[1]

---

[1] *Law Offices of Jeffrey Sherbow PC v Fieger & Fieger PC*, 509 Mich 982 (2022); *Law Offices of Jeffrey Sherbow PC v Fieger & Fieger PC*, unpublished order of the Court of Appeals, entered November 16, 2022 (Docket No. 361567).

## II. SCOPE OF REMAND

The Fieger Firm argues that the trial court erred when it held that the Supreme Court's opinion ordering a new trial precluded the trial court from considering certain pretrial matters, such as motions for summary disposition. We agree.

## A. STANDARD OF REVIEW

Whether a trial court properly interpreted the scope of a remand is a question of law that this Court reviews de novo. *City of Kalamazoo v Dep't of Corrections*, 229 Mich App 132, 134-135; 580 NW2d 475 (1998).

## B. ANALYSIS

"The power of the lower court on remand is to take such action as law and justice may require so long as it is not inconsistent with the judgment of the appellate court." *Sokel v Nickoli*, 356 Mich 460, 464; 97 NW2d 1 (1959). See also *Grievance Administrator v Lopatin*, 462 Mich 235, 261; 612 NW2d 120 (2000) (stating that on remand, the lower court is "free . . . to consider and decide any matters left open by [the appellate court's] mandate"). The question presented here is whether summary disposition is available to a party after an appellate court remands for a new trial.

We are unable to locate any binding authority addressing this question directly, but some persuasive authority has squarely addressed it. In *People ex rel Dep't of Transp v Firstar Illinois*, 365 Ill App 3d 936; 851 NE2d 682 (2006), the Illinois Court of Appeals explained that "[w]hen a new trial is ordered, that includes all phases of a trial, including all pretrial matters." *Id*. at 940, citing *Jones v Petrolane-Cirgas, Inc*, 186 Ill App 3d 1030, 1033; 542 NW2d 1186 (1989).[2] The court concluded that "if, on remand for a new trial, the trial court finds that no issue of material fact exists, the trial court may enter summary judgment." *Firstar Illinois*, 365 Ill App 3d at 940.

We find this analysis persuasive. The purpose of a trial is for the fact-finder to determine disputed facts. See *Moll v Abbott Laboratories*, 444 Mich 1, 26; 506 NW2d 816 (1993). It follows that when the "facts of the case are uncontroverted and the only question left is what legal conclusions can be drawn from the facts, the question is for the court and not the jury." *Id*. See also *People's Wayne Co Bank v Wolverine Box Co*, 250 Mich 273, 277-278; 230 NW 170 (1930). This procedure "promotes efficiency and preservation of judicial resources." *Moll*, 444 Mich at 26. The goal of wanting to avoid wasting time and resources when there is no factual dispute is not abrogated because a matter has been remanded.

We therefore conclude that, when a case is remanded for a new trial, the trial court may consider and grant a motion for summary disposition if the requirements for granting such a motion

---

[2] Caselaw from other states is not binding but may be considered for its persuasive value. *Estate of Voutsaras by Gaydos v Bender*, 326 Mich App 667, 676; 929 NW2d 809 (2019).

-7-

are satisfied. To avoid a trial on this basis is not "inconsistent with the judgment of the appellate court." *Sokel*, 356 Mich at 464.[3]

This conclusion is consistent with the results reached in past cases. In *Candelaria v BC Gen Contractors, Inc*, 236 Mich App 67, 85; 600 NW2d 348 (1999) (*Candelaria I*), this Court reversed a jury verdict and remanded for a new trial with respect to one of the defendants. On remand, the trial court denied that defendant's motion for summary disposition. *Candelaria v BC Gen Contractors, Inc*, 252 Mich App 681, 688; 653 NW2d 630 (2002) (*Candelaria II*). In the second appeal, this Court reversed and remanded for the trial court to enter an order granting the defendant's motion for summary disposition. *Id*. In *Baitinger v Brisson*, 230 Mich App 112, 114; 583 NW2d 481 (1998), the trial court originally entered a judgment of no cause of action following a bench trial, and this Court reversed and "remanded for trial on the issue of damages." On remand, the plaintiffs filed a motion for summary disposition, which the trial court granted. *Id*. at 114-115. On appeal, this Court ruled that the defendant's appeal was not timely filed, but noted that, if it were to address the merits of the defendant's appeal, it "would find that summary disposition in favor of plaintiffs was proper." *Id*. at 116 n 2. Finally, in *Davis v Roper Corp*, 160 Mich App 595, 597; 408 NW2d 513 (1987) (*Davis I*), vacated by *Davis v Sears, Roebuck & Co*, 431 Mich 871; 429 NW2d 594 (1988) (*Davis II*), this Court recounted that, previously, following a jury verdict, a panel of this Court remanded the case for a new trial against one of the defendants. On remand, that defendant moved for summary disposition, and the trial court granted the motion. *Id*. On appeal, this Court concluded that summary disposition was improperly granted and remanded the case to the trial court. *Id*. at 600. Eventually, our Supreme Court vacated this Court's judgment in *Davis I* and affirmed the trial court's decision to grant summary disposition in favor of the defendant. *Davis II*, 431 Mich at 871.[4] While none of these cases squarely support the holding of this opinion, we are persuaded by the fact that the results reached in those cases are consistent with the one reached here.

Accordingly, we hold that a trial court's consideration of a motion for summary disposition is not inconsistent with an appellate court's remand for a new trial. Here, the Supreme Court remanded this case for a new trial to resolve Sherbow's claim regarding the referral fee for Dixon.

---

[3] We further note that, if the case proceeded to trial, it cannot be seriously disputed that the trial court would have the authority to grant a motion for a directed verdict. Such a motion is analogous to a motion for summary disposition under MCR 2.116(C)(10)—the primary difference is when the motion is filed. See *Price v Austin*, 509 Mich 938, 944 (2022) (VIVIANO, J., dissenting).

[4] In *Sun Valley Foods Co v Ward*, unpublished opinion of the Court of Appeals, issued November 13, 2003 (Docket No. 238004), an appellate court vacated a jury verdict and remanded the case for a new trial. *Id*. at 4. On remand, the defendant moved for summary disposition, and the trial court denied the motion, reasoning that it was required to conduct a new trial. *Id*. at 4-5. On appeal, the parties argued whether the doctrine of the law of the case precluded the trial court from considering the defendant's motion for summary disposition. *Id*. at 6. This Court held that "the doctrine of the law of the case did not preclude the trial court from hearing a summary disposition motion as to whether 'there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law.' " *Id*.

If summary disposition was warranted for any party, then the trial court was permitted to grant it. The trial court therefore erred when it denied the Fieger Firm's motion for summary disposition on the basis that the Supreme Court's remand did not permit it. We accordingly vacate that order with respect to its ruling on the Fieger Firm's motion.[5]

The Fieger Firm further argues that, addressing the merits of its motion for summary disposition, the motion should have been granted. We decline the Fieger Firm's request to address the merits of its motion because the trial court denied the motion before Sherbow had an opportunity to respond. Almost 100 years ago, our Supreme Court recognized that a grant of summary disposition does not violate due process so long as the nonmoving party is given sufficient notice and an opportunity to be heard. *People's Wayne Co Bank*, 250 Mich at 283-284. Here, Sherbow did not have an opportunity to be heard in the trial court in response to the Fieger Firm's motion for summary disposition. Thus, it would be premature for this Court to rule on the motion. Consequently, we remand this case for the trial court to allow Sherbow an opportunity to respond to the Fieger Firm's motion, and then consider the merits of that motion.

## III. COLLATERAL ESTOPPEL

We next turn to Sherbow's challenge to the trial court's denial of his two motions arguing that relitigation of certain issues was barred by collateral estoppel.

## A. STANDARD OF REVIEW

The trial court addressed Sherbow's collateral-estoppel arguments in two motions in limine. A trial court's decision on a motion in limine is reviewed for an abuse of discretion. *Bellevue Ventures, Inc v Morang-Kelly Investment, Inc*, 302 Mich App 59, 63; 836 NW2d 898 (2013). However, to the extent the decision involves the proper application of legal principles, that aspect of the decision is reviewed de novo. *Radwan v Ameriprise Ins Co*, 327 Mich App 159, 164; 933 NW2d 385 (2018).

## B. ANALYSIS

Sherbow filed two motions in limine arguing that collateral estoppel barred the relitigation of certain issues at the parties' second trial. In one motion, Sherbow argued that, because the jury at the first trial found that Danzig had authority to bind the Fieger Firm, the Fieger Firm was collaterally estopped from relitigating that issue. In his other motion, Sherbow sought to limit retrial to whether Sherbow's interaction with Dion was sufficient to establish an attorney-client relationship with Dixon. On this point, Sherbow argued that, by finding at the first trial that Sherbow legally referred Dion on behalf of Rice's estate to the Fieger Firm, the jury necessarily found that (1) Dion was advised of Sherbow's referral agreement with the Fieger Firm and (2)

---

[5] As stated, on appeal, Sherbow does not challenge the trial court's denial of his motion for summary disposition.

Dion did not object to the agreement. Thus, according to Sherbow, collateral estoppel precluded relitigation of these issues.

In denying Sherbow's motions, the trial court primarily reasoned that, because the Supreme Court remanded for a new trial, it was powerless to limit the scope of that new trial. We disagree with the trial court's view that it could not apply any legal doctrines, such as collateral estoppel, after the case was remanded for a new trial. As stated before, "[t]he power of the lower court on remand is to take such action as law and justice may require so long as it is not inconsistent with the judgment of the appellate court." *Sokel*, 356 Mich at 464. Stated differently, when a case is remanded, the lower court is "free . . . to consider and decide any matters left open by [the appellate court's] mandate." *Lopatin*, 462 Mich at 261. We find nothing in *Sherbow II* foreclosing the trial court's consideration of whether collateral estoppel may apply to certain issues on remand. Moreover, as explained, when an appellate court orders a new trial, that includes all phases of trial, including all pretrial matters. Thus, if Sherbow establishes that collateral estoppel should preclude the relitigation of certain issues, applying that legal principle would not be inconsistent with our Supreme Court's directive for a new trial. Our conclusion that principles of collateral estoppel may apply when a case is remanded for a new trial is consistent with at least one past case. See *Davis II*, 431 Mich at 871 (affirming the trial court's grant of summary disposition to the defendant on the basis of collateral estoppel after the case was remanded for a new trial with respect to that defendant).

The Fieger Firm argues—and the trial court agreed—that some caselaw provides that collateral estoppel is only available "in a subsequent, different cause of action . . . ." *People v Gates*, 434 Mich 146, 154; 452 NW2d 627 (1990). Sherbow counters that other caselaw suggests that the doctrine is not necessarily so limited. See, e.g., *Monat v State Farm Ins Co*, 469 Mich 679, 682-684; 677 NW2d 843 (2004) (listing the elements for collateral estoppel). Critically, however, neither party cites any binding caselaw directly addressing whether collateral estoppel may arise within a single cause of action.[6] We hold that it may.

One authority explains that collateral estoppel "may arise not only as between separate claims or causes of action but also within the confines of a single claim or cause of action." 18 *Wright & Miller*, Federal Practice & Procedure (3d ed), § 4418.[7] Cases from several federal circuits have followed this authority and applied principles of collateral estoppel within a single cause of action. For instance, in *DuChateau v Camp, Dresser & McKee, Inc*, 713 F3d 1298, 1299 (CA 11, 2013), the plaintiff brought three claims against the defendant, including a pregnancy-discrimination claim and a claim for retaliation. The trial court granted summary disposition on the plaintiff's pregnancy-discrimination claim, and her claim of retaliation proceeded to trial, after

---

[6] We acknowledge that *Davis II* at the very least arguably supports that collateral estoppel may arise in a single cause of action, but that case did not explicitly address the issue.

[7] The same source explains that this type of collateral estoppel is more precisely referred to as "direct estoppel," but this opinion will use the term "collateral estoppel" to avoid confusion. *Wright & Miller*, 18 Federal Practice & Procedure (3d ed), § 4418. See also *Cotton v Heyman*, 63 F3d 1115, 1118; 314 US App DC 161 (1995) ("Direct estoppel, as opposed to collateral estoppel, governs the preclusive effect of a litigated issue in a separate proceeding within a single suit.").

which the jury found that the plaintiff had not suffered an adverse employment action. *Id*. On appeal, the plaintiff challenged the trial court's dismissal of her pregnancy-discrimination claim, but the Eleventh Circuit held that it "need not decide that issue because the jury verdict against [the plaintiff on] her claim of retaliation directly estops her claim of pregnancy discrimination." *Id*. at 1301. It explained, "The jury verdict against her claim of retaliation estops [the plaintiff] from relitigating the common issue whether she suffered an adverse employment action." *Id*. at 1302.

In a case out of the Seventh Circuit, the district court dismissed the plaintiff's claim of racial discrimination in contracting under 42 USC § 1981, but allowed the plaintiff's claim of racial discrimination in employment under 42 USC § 2000e to proceed to trial. *Freeman v Chicago Park Dist*, 189 F3d 613, 616-617 (CA 7, 1999). In a special verdict form, the jury found that the plaintiff suffered harassment, but that the harassment was not motivated by racial discrimination. *Id*. at 616. On appeal, the plaintiff challenged the trial court's dismissal of her § 1981 claim. *Id*. at 618. The Seventh Circuit rejected that challenge, reasoning that an essential element of the plaintiff's untried claim was that the defendant's action be motivated by racially discriminatory animus, so the jury's finding that the defendant's conduct was not motivated by racial discrimination "preclude[d] recovery on [the plaintiff's] § 1981 claim." *Id*.

In line with these authorities, we conclude that collateral estoppel may arise in the context of a single cause of action. This holding is also in accord with the purposes underlying collateral estoppel, including conserving judicial resources and preventing inconsistent decisions. See *City of Detroit v Qualls*, 434 Mich 340, 357 n 30; 454 NW2d 374 (1990). We therefore reject the Fieger Firm's argument that collateral estoppel is *only* available in a subsequent, different cause of action.

Turning to the substance of Sherbow's motions, he argues that the Fieger Firm should be collaterally estopped from arguing that Danzig did not have authority to bind the Fieger Firm. We agree. As explained by our Supreme Court:

> Generally, for collateral estoppel to apply three elements must be satisfied: (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel. [*Monat*, 469 Mich at 682-684 (quotation marks, citation, alteration, and footnote omitted).]

There can be no serious dispute that the second and third elements are satisfied—at the first trial, the parties fully litigated whether Danzig had authority to bind the Fieger Firm to the referral agreements with Sherbow. Indeed, one of the central disputes was whether Danzig colluded with Sherbow to defraud the Fieger Firm, and thus lacked authority to bind the Fieger Firm. With regard to the first element, the jury found in a valid and final judgment that Danzig had authority to bind the Fieger Firm, plainly rejecting the Fieger Firm's collusion argument. The trial court provided the following instruction to the jury:

> Apparent authority cannot arise from an agent's conduct while serving the interest of someone other than the employer. If you believe that Danzig was serving

the interest of himself or Sherbow rather than the Fieger firm, then you cannot consider this evidence of apparent authority.

The verdict form then asked jurors "did Danzig have actual or apparent authority to bind Fieger Firm," and the jury indicated "yes." This finding was essential to the jury's verdict that Sherbow was entitled to the referral fee with respect to Dion on behalf of Rice's estate. And the jury's verdict in this respect remains intact after *Sherbow II*. Accordingly, whether Danzig had authority to bind the Fieger Firm to the referral agreements was a question of fact essential to the judgment that was actually litigated and determined by a valid and final judgment in the parties' first trial. Thus, all three elements of collateral estoppel are satisfied, and the Fieger Firm is collaterally estopped from relitigating whether Danzig had authority to bind the Fieger Firm.

Sherbow's next argument is a closer question. The jury found in favor of Sherbow on his claim for a referral fee for referring Dion on behalf of Rice's estate to the Fieger Firm. To reach this verdict, the jury had to find that Sherbow proved (due to the misplaced burden of proof) that Dion was informed of the referral agreement and did not object. See MRPC 1.5(e). See also *Sherbow II*, 507 Mich at 312 n 80. However, as the Fieger Firm points out, these findings only pertain to whether Dion was informed about the agreement—and did not object to the agreement—on *behalf of Rice's estate*. Whether Dion was informed of the referral agreement with respect to Dixon remains an open question. Stated differently, the jury could have found that Dion was informed of the referral agreement with respect to Rice's estate, but had not been informed of the referral agreement with respect to Dixon. Thus, the question of whether Dion was informed of the referral agreement *with respect to Dixon*, and whether he objected to the agreement *on her behalf*, were not essential to the jury's verdict in favor of Sherbow at the first trial. Accordingly, the Fieger Firm is not collaterally estopped from contesting those issues on remand.[8]

### IV. DIXON'S TESTIMONY

The Fieger Firm argues that the trial court erred by granting in part Sherbow's motion to exclude Dixon's testimony because she was incapacitated during the time that Dion interacted with Sherbow and the Fieger Firm. We agree.

### A. STANDARD OF REVIEW

A trial court's decision on a motion in limine is reviewed for an abuse of discretion. *Bellevue Ventures*, 302 Mich App at 63. A trial court's decision to exclude evidence is likewise reviewed for an abuse of discretion. *Dep't of Transp v VanElslander*, 460 Mich 127, 129; 594

---

[8] We stress, however, that even if the Fieger Firm was collaterally estopped from relitigating these issues on remand, the effect of such a ruling would be limited. Contrary to Sherbow's argument, such a ruling would *not* limit retrial to the sole issue of whether Sherbow's interaction with Dion was sufficient to create an attorney-client relationship with Dixon. For instance, along with this issue, the parties dispute whether Dixon would be bound by such a relationship formed by Dion (i.e., whether Dion had authority to bind Dixon), and, if not, whether Dixon nevertheless ratified Dion's actions. The parties are free to litigate these issues, or others that may arise, on remand.

NW2d 841 (1999). "An abuse of discretion occurs when a trial court's decision is not within the range of reasonable and principled outcomes." *Sys Soft Technologies, LLC v Artemis Technologies, Inc*, 301 Mich App 642, 650; 837 NW2d 449 (2013) (quotation marks and citation omitted).

## B. ANALYSIS

After this case was remanded in *Sherbow II*, Sherbow sought to exclude Dixon's testimony that Danzig never informed her of the fee-sharing agreement and that she would not have retained Sherbow. In his brief, however, Sherbow went further and asked the trial court "to preclude any testimony from Ms. Dixon." The trial court granted Sherbow's motion in part, ruling:

> Absent a stipulation of counsel, the testimony that Dorothy Dixon was in a coma at the time the alleged creation of the attorney client relationship at issue is relevant. However, once and if that fact is established, her testimony would otherwise be irrelevant under MRE 401 and MRE 402 and its introduction would certainly be excludable under MRE 403 (i.e., the confusion and waste of time it would engender would substantially outweigh whatever minuscule probative value it might have).

We understand the trial court's order to be broad—it deems all of Dixon's testimony inadmissible except to the extent that she can testify that she was in a coma when Dion spoke to Sherbow and retained the Fieger Firm on her behalf. That Dixon was in a coma at this time was never disputed, so the trial court's ruling effectively excludes all of Dixon's testimony. This prohibition is far too broad. At a minimum, the parties dispute whether Dion had authority to bind Dixon when he spoke to Sherbow on her behalf, and, if not, whether Dixon ratified Dion's actions. Absent a stipulation from counsel, testimony from Dixon would be the most likely source of resolving these disputes. Whether Dion had authority to bind Dixon depends on the actions and intent of Dixon, as the principle, which Dixon would be able to testify about. See *Sherbow I*, 326 Mich App at 700. Likewise, Dixon would likely be needed to testify about whether she ratified Dion's actions. See *Wexford Twp v Seeley*, 196 Mich 634, 640; 163 NW 16 (1917) ("Ratification takes place when one person adopts a contract made for him, or in his name, which is not binding on him because the one who made it was not duly authorized to do so.") (Quotation marks and citation omitted.) Dixon's testimony on these issues would clearly be relevant, and it is unclear how any of Dixon's testimony relating to these issues would be inadmissible under MRE 403. Accordingly, the trial court's ruling deeming almost all of Dixon's testimony inadmissible is reversed.[9]

## V. CONCLUSION

The trial court's order denying the parties' motions for summary disposition is vacated with respect to the Fieger Firm's motion. The trial court shall allow Sherbow an opportunity to

---

[9] This ruling does not restrict the trial court's ability to limit Dixon's testimony on remand if such a ruling would be otherwise permissible and appropriate under the court rules.

respond to that motion, and then rule on the merits of the Fieger Firm's motion. The trial court's order denying Sherbow's motion in limine to preclude the Fieger Firm from relitigating issues with respect to Danzig's authority to bind the Fieger Firm is reversed, but the trial court's order denying Sherbow's motion to limit the issue at retrial to whether Sherbow's interaction with Dion was sufficient to form an attorney-client relationship with respect to Dixon is affirmed. Finally, the trial court's order granting in part Sherbow's motion to exclude Dixon's testimony is reversed.

Affirmed in part, reversed in part, vacated in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron
/s/ Stephen L. Borrello